[No. A016107. First Dist., Div. Three. Jan. 7, 1985.]

NICK LAWRENCE, Plaintiff and Appellant, v.
BANK OF AMERICA et al., Defendants and Respondents.

432

COUNSEL

Charles F. Lawrence and R. Paul Bonnar for Plaintiff and Appellant.

Theodore Sachsman, Robert A. Padway and Marcy J. Bergman for Defendants and Respondents.

---

Opinion

**WHITE, P. J.**—Nick Lawrence, plaintiff below, appeals from an order sustaining respondents' demurrer to his complaint without leave to amend, and dismissing the action with prejudice. We affirm.

For purposes of this appeal, those factual allegations of the complaint which are properly pleaded are deemed admitted by respondent's demurrer. (*White* v. *Davis* (1975) 13 Cal.3d 757, 765 [120 Cal.Rptr. 94, 533 P.2d 222].) The first cause of appellant's second amended complaint alleges that he was a customer of respondent Bank of America (the Bank), and had a checking account, No. 5575-9858, at the Shattuck-Vine branch. On February 22, 1980, appellant presented two checks in the total amount of $685 at the Shattuck-Vine branch, drawn by a third party on the Bank's Watsonville branch. Appellant was payee on the checks. Employees at the Shattuck-Vine branch used the bank's computer system to ascertain whether the account at the Watsonville branch on which the checks were drawn contained sufficient funds to cover the checks, and that no stop-payment order or hold had been placed on them. The employees then gave appellant the amount of the checks in cash. Appellant's complaint alleges that the branch employees actually "debited the drawer's [Watsonville] account" through the Bank's "central computer system"; and that the action of debiting the Watsonville account, cashing the checks, and paying appellant the face amount of the checks in cash constituted "final payment and settlement" under California Uniform Commercial Code section 4213.

Four days later, on or about February 26, 1980, respondent J. Pratt, an assistant operations officer of the Shattuck-Vine branch, informed appellant by telephone that the checks "had been retroactively dishonored" by the Watsonville branch on account of "a subsequently filed stop-payment order." The complaint alleges that this stop-payment order, "if and when filed," was filed "after the checks to which it related had already been cashed and the account on which they were drawn had already been debited." Pratt "demanded" that appellant return the $685; appellant refused. The Shattuck-Vine branch then debited appellant's account in the amount of $685, and returned the two checks to appellant by mail.

Appellant alleges that the Bank's branches "are not legal entities capable of independent action but act solely as agents and in the name and on the

behalf of" the Bank; that the Shattuck-Vine branch had a "fiduciary duty to enforce collection" of the checks in question; that the Watsonville branch had the duty to honor and pay the checks because "any stop-payment order it may have received was tardily filed and was not effective against a holder in due course"; "that by its intrusion into the transaction . . . [respondent] BANK became and was the only bank with which [appellant] dealt"; that "the payment made to [appellant] on the checks which he had presented, being in cash, comprised final payment and settlement pursuant to Section 4213 of the California Commercial Code"; and that the subsequent debiting of appellant's account was unauthorized and illegal. On this basis, the complaint prays for damages in the amount of $685, together with interest of at least 18 percent.

Appellant's second cause of action alleges facts relating to the events surrounding appellant's oral and written demands to various Bank employees that the Bank restore the $685 to his account. These employees, including various personnel of the Shattuck-Vine branch, officers of the Bank and corporate legal counsel, all responded to appellant's repeated demands by stating that payment on the subject checks was not final at the time they were cashed at the Shattuck-Vine branch; that the transaction would not become final until the checks reached the maker's branch (Watsonville, in this case) and were honored; that the stop-payment at the Watsonville branch was placed before the checks reached that branch; that the stop-payment order was therefore timely and effectual; and that the Shattuck-Vine branch therefore had the right to recover the money paid out to appellant. The individual respondents also suggested that appellant's proper course was to request reimbursement from the maker of the checks. Appellant alleges that the Bank owed a fiduciary duty to appellant to protect his funds and collect from the drawer; and that the Bank acted in bad faith and with oppression, fraud and malice in failing to do so. On the second cause of action, appellant seeks general damages of $2,000 and punitive damages of $50,000. The same damages are sought in connection with the third cause of action, which alleges a conspiracy on the part of the Bank and its named employees to withhold appellant's money for contrived and "spurious" reasons.[1]

■ Appellant contends that the trial court erred in sustaining respondent's demurrer and entering the judgment of dismissal against him. He has been unable, however, to cite any authority to sustain the position that the introduction of computers into the transaction of the banking business has abrogated the principle, established by statute in California, that "[e]ach

---

[1]Inexplicably, the complaint does not name the actual maker of the checks, who stopped payment on the checks and thereby precipitated this entire dispute.

branch or separate office of a bank shall be deemed a separate bank" for purposes of identifying the "payor" or "drawee" bank, and establishing the requisite conditions for "final payment" of a check. (Cal. U. Com. Code, § 4105, subd. (g).) This legal definition of branches as separate "banks" is emphasized by section 4106 of the California Uniform Commercial Code, which states: "A branch or separate office of a bank is a separate bank for the purpose of computing the time within which and determining the place at or to which action may be taken or notices or orders shall be given . . ., and the receipt of any notice or order by, or the knowledge of, one branch or separate office of a bank is not actual or constructive notice to or knowledge of any other branch or separate office of the same bank and does not impair the right of such other branch or separate office to be a holder in due course of an item." The California Code comment pertaining to this section states: "1. This section is of special importance in California because of the prevalence of branch banking. In many other states branch banking is prohibited."

Under the California Uniform Commercial Code, the Shattuck-Vine and Watsonville branches, as two separate branches or offices of the Bank, are different "banks"; each one is entirely distinct and separate in its status as either a depository, payor or collecting bank. A "payor bank" is the bank "by which an item is payable as drawn or accepted." (Cal. U. Com. Code, § 4105, subd. (b).) A "depository bank" is "the first bank to which an item is transferred for collection even though it is also the payor bank." (Cal. U. Com. Code, § 4105, subd. (a).) A "collecting bank" is "any bank handling the item for collection except the payor bank." (Cal. U. Com. Code, § 4105, subd. (d).) In this case, the Shattuck-Vine branch was both a depository and a collecting bank, while the Watsonville branch, the bank on which the checks in this case were drawn, was the payor bank.

Under California Uniform Commercial Code section 4213, "[a]n item is finally paid by a payor bank when the bank has done any of the following, whichever happens first: (a) Paid the item in cash; . . ." Until final payment is made by the payor bank, any payment or cashing of a check by a collecting bank such as Shattuck-Vine is a "provisional settlement," regardless of the form of indorsement on the check or lack thereof; and any rights to the proceeds of the check are subject to the setoff rights of the collecting bank. (Cal. U. Com. Code, § 4201.) If, having made such a provisional settlement with a customer, the collecting bank itself thereafter fails by reason of a stop-payment or otherwise to receive final settlement for the check, the collecting bank "may revoke the settlement given by it, charge back the amount of any credit given for the item to its customer's account or obtain refund from its customer whether or not it is able to return the items if by its midnight deadline or within a longer reasonable time after it

learns the facts it returns the item or sends notification of the facts." (Cal. U. Com. Code, § 4212, subd. (1).) Moreover, any indorser of the check is liable to pay the amount of the check to the holder or any subsequent indorser thereof in the event of the check's dishonor. (Cal. U. Com. Code, § 3414.) On the other hand, a payor bank such as the Watsonville branch has a legal obligation to its customer to honor his stop-payment order, so long as the order is received by the payor bank a "reasonable time" before the *payor* bank has accepted the checks or paid them in cash. (Cal. U. Com. Code, § 4303.) If it pays the checks contrary to a valid stop-payment order, the payor bank will be liable to its customer for the amount paid. (Cal. U. Com. Code, § 4403.)

The complaint in this case, while acknowledging the clear statutory authority in this state, simply alleges that the Shattuck-Vine branch and the Watsonville branch were actually a single bank, by reason of the computer network used by both of them, and that Shattuck-Vine's cashing of the checks for appellant was therefore actually "final payment." Under this theory, of course, there is no distinction between payor and collecting banks, and the cashing of the check at Shattuck-Vine effectively and immediately precluded Watsonville from honoring the stop-payment order submitted by the maker of the checks. This theory flies in the face of the California law outlined above, and is completely without merit.

Appellant cites only one California case in support of its argument: *Farmers & Merchants Bank* v. *Bank of America* (1971) 20 Cal.App.3d 939 [98 Cal.Rptr. 381]. The case is inapposite, however. It deals with the specific question of when the time for the running of the midnight deadline commences, and simply holds that for this purpose, checks are received when they first arrive at a branch *or any part thereof.* In that case, the checks first arrived at the computer center where the branch's bookkeeping functions were performed. The court found that the physical separation of the branch's computer bookkeeping center from the actual branch office had no legal significance for purposes of determining when the checks "arrived" at the branch. (*Id.,* at pp. 943-944.) The case does not address the larger and distinctly separate issue of whether one branch acting as a collecting bank can make final payment on checks drawn on a *different* branch and thus in effect become the payor bank itself. No cases support this proposition, which is directly contrary to statute, banking practice, public policy and common sense.

Appellant *was given two opportunities* to amend his complaint, yet he has still failed to state facts sufficient to constitute a cause of action. ■ Leave to amend should be denied where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law.

(*Routh* v. *Quinn* (1942) 20 Cal.2d 488, 493 [127 P.2d 1, 149 A.L.R. 215]; *Berkeley Police Assn.* v. *City of Berkeley* (1977) 76 Cal.App.3d 931, 942 [143 Cal.Rptr. 255]; *Loeffler* v. *Wright* (1910) 13 Cal.App. 224, 232 [109 P. 269]; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 847, p. 2451.) There was no error in the trial court's sustaining of respondents' demurrer without leave to amend as to the first cause of action of appellant's complaint.[2]

The same is true of appellant's other two causes of action. The second cause of action alleges breach of fiduciary duty and seeks punitive damages. However, under ordinary circumstances the relationship between a bank and its depositor is that of debtor-creditor, and is not a fiduciary one; and appellant has failed to allege any facts which would support a finding that a fiduciary relationship existed between appellant and any of the respondents in this case. (*Allen* v. *Bank of America* (1943) 58 Cal.App.2d 124, 126-128 [136 P.2d 345].) The third cause of action, which adds a conspiracy allegation based upon information and belief, is similarly meritless. The only named defendants are the Bank and its employees, and it is well established that the agents and employees of a corporation cannot conspire with their corporate principal. (*Wise* v. *Southern Pacific Co.* (1963) 223 Cal.App.2d 50, 72-73 [35 Cal.Rptr. 652].)

The order of dismissal is affirmed.

Barry-Deal, J., and Anderson, J.,* concurred.

---

[2]It is not even clear from the complaint exactly what legal theory appellant had in mind in his first cause of action. His brief on appeal suggests conversion of property. It is well settled, however, that money on deposit with a bank may not be the subject of conversion. (*Metropolitan L. Ins. Co.* v. *S. F. Bank* (1943) 58 Cal.App.2d 528, 533-534 [136 P.2d 853].)

*Assigned by the Chairperson of the Judicial Council.