**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AMERICAN MODEL HOME
CORPORATION, a California
corporation; AMHC CORPORATION, a
California corporation,
Plaintiffs-Appellants,

v.

No. 98-1396

RESOURCE MORTGAGE CAPITAL,
INCORPORATED, a Virginia
corporation; NATIONAL MODEL HOME,
INCORPORATED, a Virginia
corporation,
Defendants-Appellees.

AMERICAN MODEL HOME
CORPORATION, a California
corporation; AMHC CORPORATION, a
California corporation,
Plaintiffs-Appellees,

v.

No. 98-1691

RESOURCE MORTGAGE CAPITAL,
INCORPORATED, a Virginia
corporation; NATIONAL MODEL HOME,
INCORPORATED, a Virginia
corporation,
Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-97-749-3)

Submitted: January 29, 1999

Decided: February 24, 1999

Before ERVIN, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Archibald Wallace, III, L. Lee Byrd, SANDS, ANDERSON, MARKS & MILLER, Richmond, Virginia, for Appellants. Stephen T. Gannon, David G. Shuford, Alfred J. T. Byrne, Charles M. Sims, LECLAIR RYAN, P.C., Richmond, Virginia, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

American Model Home Corporation and AMHC Corporation (collectively "AMHC"), appeal a district court final order granting summary judgment to Resource Mortgage Capital, Inc. and National Model Homes, Inc. (collectively "Resource"). Resource cross-appeals the court's denial of its motion for attorneys' fees. For the reasons that follow, we affirm.

AMHC's action concerned on an alleged breach of fiduciary trust. The corporation was formed in 1993 to engage in the business of purchasing model homes and leasing them back to the home builders for

2

the purpose of removing the home from the home builders' balance sheets and freeing up capital for paying down debt or other purposes. In an effort to secure mortgage financing for its model home purchases, AMHC contacted several banks, some of whom were sent an information memorandum describing AMHC's business plan. Eventually, AMHC had discussions with Resource for the purpose of exploring opportunities to provide AMHC with equity and loan funding. Resource is a self-managed real estate investment trust.

AMHC contends that it provided Resource with the information memorandum and requested that it keep the contents confidential. No one at Resource recalled seeing the memorandum or agreeing to keep it confidential. The memorandum stated the following on its cover page:

> After signing a confidentiality and non-disclosure, interested parties are expected to review independently all documents relating to this memorandum as to the accuracy and completeness of the information contained herein.

(J.A. at 950). Resource did not sign a confidentiality and non-disclosure agreement. The memorandum included a summary of AMHC's business plan, the commitment it was seeking from lenders, corporate structure and experience of the principals, and several reprints from trade journals.

On November 5, 1993, AMHC and Resource entered into an agreement whereby Resource agreed to fund up to $50 million in mortgages through December 31, 1994, under the terms and conditions set forth in a letter agreement.[1] The letter agreement does not contain a confidentiality agreement, a non-disclosure agreement, or a covenant not to compete.

From February 1994 until July 1995, Resource provided AMHC mortgage financing in excess of $33 million. The funds were used in sixteen different transactions between AMHC and various home

---

[1] AMHC refers to this agreement as the Master Agreement. Resource refers to it as the Preliminary Terms Agreement. We will simply call it the letter agreement.

builders. In connection with all sixteen of these transactions, AMHC entered into separate loan agreements with Resource to provide mortgage financing. Resource also provided AMHC with unsecured lines of credit in the amounts of $500,000, and $125,000.

Although the letter agreement expired by its own terms on December 31, 1994, Resource continued to provide mortgage financing to AMHC under essentially the same terms until it ceased funding additional home purchases in July 1995. Meanwhile, the parties held discussions about renewing the letter agreement or entering into a joint venture. However, the letter agreement was not renewed and the parties did not enter into a joint venture.

In September 1995, Resource incorporated National Home Funding Corporation (later changed to National Model Homes, Inc.) for the purpose of performing the purchase and lease back of model homes as performed by AMHC. Thus, Resource, through this subsidiary, became a direct competitor of AMHC. AMHC contended that it lost business because Resource used confidential information contained in the information memorandum to create the business plan and to underbid AMHC.

In March 1997, AMHC filed a complaint in the United States District Court for the Central District of California against Resource. The case was transferred to the Eastern District of Virginia under the forum nonconveniens provisions of 28 U.S.C.A. § 1404(a) (West 1993 & Supp. 1998). The complaint raised the following eight counts:

> Count I:  Breach of Duty of Confidentiality;

> Count II:  Misappropriation of Trade Secrets;

> Count III:  Misappropriation of Confidential Information;

> Count IV:  Common Law Unfair Competition;

> Count V:  Unfair Competition in Violation of California's Business Practices Act;

4

Count VI: Tortious Interference with Actual Business Advantage;

Count VII: Tortious Interference with Prospective Business Advantage;

Count VIII: Injunctive Relief.

The Defendants filed a motion for summary judgment, and then a renewed motion for summary judgment, which were provisionally denied. On February 2, 1998, the Defendants filed a second renewed motion for summary judgment. On February 4, 1998, AMHC filed a motion for leave to file an amended complaint, seeking leave to drop six of the original eight counts and to add claims for breach of fiduciary duty and breach of contract. The Defendants opposed leave to file an amended complaint on futility grounds. In response, AMHC argued that the Defendants' opposition was "an ill-disguised motion for summary judgment" and accused Resource of "essentially restat[ing] and recast[ing] their arguments in support of their pending motion for summary judgment." (J.A. at 885 n.4).

On February 19, 1998, the court heard argument on the two pending motions. When the court turned its attention to the summary judgment motion, the following colloquy occurred:

Resource counsel: Much of [the motion] obviously spills over into the new claims as well.

Court: Right.

Resource: So, with the exception perhaps of the contract claim, I think [the motion] will address virtually everything that is before the court in some form or another.

Court: I think you can speak to the new counts if they're added on your motion for summary judgment. Because they're sort of encompassed within the other counts that he had pending.

5

(J.A. at 1436). Defendants' counsel proceeded to address all the claims asserted by AMHC in its original complaint and amended complaint, including the breach of contract claim. Specifically, counsel stated "[L]et me address the contract claim because I probably was remiss in not addressing the summary judgment arguments much to that claim." (J.A. at 1478). AMHC did not object to the court's consideration of the two new claims in the amended complaint.

The district court granted AMHC leave to file an amended complaint, which included an oral motion to retain count five. The amended complaint contained the following five counts:

> Count I:  Breach of Fiduciary Duty;
>
> Count II:  Breach of Contract;
>
> Count III:  Tortious Interference with Actual Business Advantage;
>
> Count IV:  Tortious Interference with Prospective Business Advantage;
>
> Count V:  Violation of California's Unfair Business Practices Act.

The court also granted Resource's motion for summary judgment and dismissed all five counts.

Resource filed a motion for attorneys' fees premised on the language in the loan agreements and line of credit notes that provided:

> If any dispute arises under this Agreement, the prevailing party shall be entitled to recover its cost and reasonable attorneys fees incurred in connection with that dispute.

(J.A. at 364). The court denied the motion, finding that AMHC was not seeking damages for claims arising from the breach of any of the particular loan agreements.

6

On appeal, AMHC claims that the court erred in granting summary judgment on counts I, IV, and V of the amended complaint because there are factual disputes. AMHC also contends that summary judgment should not have been granted on counts I and II because neither count was addressed by the summary judgment motion. **2**

We will first consider AMHC's procedural challenge. AMHC contends that it was not obligated to defend counts I and II against a summary judgment motion because these counts did not arise until the motion for leave to file an amended complaint, which was filed after Resource filed the second renewed summary judgment motion. Generally, a non-movant is entitled to notice and an opportunity to be heard prior to granting summary judgment. See United States Dev. Corp. v. Peoples Fed. Savs. & Loan Ass'n, 873 F.2d 731, 735 (4th Cir. 1989). In this instance, AMHC did not receive the full ten-day notice required by Fed. R. Civ. P. 56(c) as to these two counts. However, at the hearing, it was clear that Resource was arguing that summary judgment should be granted as to counts I and II of the amended complaint. Furthermore, it was also clear that the court was considering the motion for summary judgment as addressing the new counts. At no time did AMHC object due to lack of notice.

Issues not raised below are usually not considered by the appellate court. See Singleton v. Wulff, 428 U.S. 106, 120 (1976). An exception to this general rule arises if the alleged error is plain and a refusal to consider it would result in a denial of fundamental justice. See United States v. Barge Shamrock, 635 F.2d 1108, 1111 (4th Cir. 1980). We find that the exception does not apply in this case.

The lack of ten days' notice was not an obvious or substantial error. See United States v. Fant, 974 F.2d 559, 565 (4th Cir. 1992) (defining plain error). AMHC itself had previously characterized Resource's response to its motion for leave to amend as, in essence, a motion for summary judgment. In addition, there was no error in considering Resource's summary judgment motion as to count I of the

_____

**2** AMHC has abandoned any challenge to the court's dismissal of count III because it does not contest the dismissal in its appellate brief. See 11126 Baltimore Blvd., Inc. v. Prince George's County, Md., 58 F.3d 988, 993 n.7 (4th Cir. 1995).

7

amended complaint since it was virtually identical to count I of the original complaint.**3** Because we do not find plain error, we will not review AMHC's procedural challenge to the court's dismissal of counts I and II.

We now consider AMHC's substantive challenge to the court's dismissal of counts I, IV and V.**4** We review de novo a district court's grant of summary judgment. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is appropriate when a non-moving party fails to establish, by sworn evidence, an essential element of the case. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering motions for summary judgment, courts must view the facts and the inferences drawn from facts in the light most favorable to the non-movant. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp. , 475 U.S. 574, 587 (1986). However, when the evidence from the entire record could not lead a rational fact finder to find for the non-moving party, no genuine issue for trial exists, and summary judgment is appropriate. See id.

Under California law, the elements of a claim for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach.**5** See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 80 Cal. Rptr. 2d 329, 355 (Cal. App. 1998). A fiduciary relationship arises whenever a person places confidence in the integrity and good faith of another and the latter voluntarily accepts that confidence. The latter may not take advantage of the other's interest without the other's knowledge or consent. Id. at 355. The essence of a fiduciary or confidential relationship:

_____

**3** Count I of the original complaint and Count I of the amended complaint both allege a confidential relationship between AMHC and Resource. The original complaint charged that the confidential relationship was breached. The amended complaint charged that from the confidential relationship, Resource owed a fiduciary duty that was breached.

**4** AMHC does not challenge the dismissal of count II on its merits.

**5** All parties agree that California law controls AMHC's claims.

8

is that the parties do not deal on equal terms, because the person in whom trust and confidence is reposed and who accepts that trust and confidence is in a superior position to exert unique influence over the dependent party.

Barbara A. v. John G., 193 Cal. Rptr. 422, 431 (Cal. App. 1983). Generally, an arm's length business relationship does not create a fiduciary relationship. See Recorded Picture Co. (Productions) Ltd. v. Nelson Entertainment, Inc., 61 Cal. Rptr. 2d 742, 754 (Cal. App. 1997); Gonsalves v. Hodgson, 237 P.2d 656, 660-61 (Cal. 1951).

AMHC contends that its association with Resource was similar to three types of circumstances from which fiduciary duties may arise under California law. The first association is that of a bank and its customers. A fiduciary relationship arises in this instance only under special circumstances, such as when there is a long-term relationship between the bank and the customer and the customer justifiably relies on the bank for advice concerning financial matters. See Bank of Am. v. Sanchez, 38 P.2d 787 (Cal. App. 1934). However, under ordinary circumstances, a fiduciary relationship does not arise in bank-customer relationships. See Lawrence v. Bank of Am., 209 Cal. Rptr. 541, 545 (Cal. App. 1985); see also Copesky v. Superior Court, 280 Cal. Rptr. 338, 348 n.14 (Cal. App. 1991) (the bank is "in no sense a true fiduciary" to its customers). We agree with the district court that AMHC's relationship was nothing more than a traditional arm's length business relationship. There were no special circumstances that created a fiduciary obligation.

The second association relied on by AMHC involves the disclosure of a trade secret to another party for mutual profit. See Thompson v. California Brewing Co., 310 P.2d 436, 475-76 (Cal. App. 1957). AMHC's relationship with Resource did not involve a trade secret. A trade secret is information that has independent economic value, not generally known to other persons who can obtain economic value from its use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. See Vacco Indus., Inc. v. Van Den Berg, 6 Cal. Rptr. 2d 602, 611 (Cal. App. 1992). AMHC's idea to purchase model homes was not original. It had been implemented by at least two other firms. In addition, the information memorandum

9

contained a substantial amount of public information. Furthermore, AMHC did not take strides to maintain the memorandum's secrecy.

The third association relied on by AMHC is that of a cooperative undertaking or joint venture. AMHC's reliance on this type of association is without merit. AMHC concedes that there was no joint venture between it and Resource. In fact, in a deposition, AMHC's president characterized the relationship as a lender-borrower relationship.

To summarize, we conclude that AMHC failed to sufficiently establish essential elements necessary to defeat a motion for summary judgment as to count I of the amended complaint. AMHC's relationship with Resource was an arm's-length business transaction conducted by sophisticated business people and attorneys. None of the organizations or persons provided with the information memorandum were required by AMHC to enter into a confidentiality agreement or an agreement not to compete. As shown by the cover page to the information memorandum, AMHC was aware of how best to protect its interests and did not take those steps. Accordingly, summary judgment was appropriate as to this claim.

As for count IV of the amended complaint, AMHC contended that Resource interfered with a prospective business arrangement by misappropriating AMHC's confidential information when it successfully bid for a project against AMHC. The court found that there was insufficient evidence to show that Resource's conduct interfered with an economic relationship whereby AMHC would be awarded a contract. Furthermore, the court also found that there was no evidence of wrongful conduct.

In order to be successful on this claim, AMHC must show a business relationship with probable future economic benefit to AMHC of which Resource was aware. AMHC must also show that Resource engaged in acts or conduct designed to interfere with the relationship; that the relationship was actually interfered with; and that Resource's acts were designed to interfere with this relationship and, in fact, did so and caused damage to AMHC. See Heller v. Pillsbury Madison & Sutro, 58 Cal. Rptr. 2d 336, 352 (Cal. App. 1996). Furthermore, AMHC must show that Resource's conduct was wrongful beyond the

10

fact of the interference itself. See Penna v. Toyota Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal. 1995).

Wrongful conduct may arise through a violation of a statute or other regulation, or a rule of common law, or an established standard of a trade or profession. This includes "actions which are independently actionable, violations of federal or state law or unethical business practices." PMC, Inc. v. Saban Entertainment, Inc., 52 Cal. Rptr. 2d 877, 891 (Cal. App. 1996). Other than claimed breach of fiduciary duty, AMHC has failed to allege any other wrongful conduct by Resource. Thus, we agree with the district court that because there was no fiduciary duty, there was an insufficient showing of wrongful conduct. Thus, this claim must fail.

Count V of AMHC's amended complaint alleges that Resource engaged in statutory unfair competition, a violation of California's Unfair Business Practice Act. See Cal. Bus. & Prof. Code § 17203 (West 1997). The court found that AMHC failed to show specific evidence that Resource engaged in unfair, fraudulent, or otherwise unlawful business practices, citing State Farm Fire & Cas. Co. v. Superior Court, 53 Cal. Rptr. 2d 229, 233 (Cal. App. 1996). An unfair business practice is a practice that offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious. See Podolsky v. First Healthcare Corp., 58 Cal. Rptr. 2d 89, 98 (Cal. App. 1996). AMHC fails to suggest any evidence that Resource engaged in conduct which violates this Act. Accordingly, we find that summary judgment was appropriately granted on this claim.

Resource's cross-appeal concerns the court's denial of its motion for attorneys' fees. Resource contends that the attorney fee provision contained in the loan agreements shows that the parties intended that the prevailing party was entitled to attorneys' fees regardless of whether the dispute sounded in contract or tort. The court concluded that the relationship between AMHC and Resource went beyond the loan agreements and AMHC's complaint did not rely on conduct that arose under any of the loan agreements.

We agree with Resource's contention that the attorney fee provision would be effective regardless of whether the claim was in con-

11

tract or tort. California law provides for an expansive interpretation of such provisions. <u>See Xuereb v. Marcus & Millichap, Inc.</u>, 5 Cal. Rptr. 2d 154, 158-59 (Cal. App. 1992). On the other hand, we find that AMHC's action did not arise under the terms of the loan agreements. AMHC's allegations are independent of the loan agreements. It cannot be said that were it not for the loan agreements, AMHC would not have a cause of action. <u>See, e.g.</u>, <u>Xuereb</u>, 5 Cal. Rptr. 2d at 158 ("<u>but for</u> the Purchase Agreement .. . the dispute between the parties would not have arisen"). In addition, this is not an instance where AMHC claims it was induced by fraud or misrepresentation to enter into the loan agreements. <u>See Lerner v. Ward</u>, 16 Cal. Rptr. 2d 486, 489 (Cal. App. 1993) (awarding attorneys' fees based on written agreement where claim of fraud and misrepresentation to induce party to enter into agreement arose out of the agreement). The letter agreement, which did not contain an attorney fee provision, defined the essential elements of the relationship upon which AMHC sued. Accordingly, we hold that the district court correctly declined to award attorneys' fees in accordance with the loan agreement's fee provision.

We affirm the court's orders. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

<u>AFFIRMED</u>

12