Filed 2/13/24  Nartey v. Regents of the University of Califoria CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| MYRALYN OA NARTEY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA,<br><br>    Defendant and Respondent. | B317392<br><br>(Los Angeles County<br> Super. Ct. No. 19SMCV01426) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Craig D. Karlan, Judge.  Affirmed.

Benjamin Law Group and Na'il Benjamin for Plaintiff and Appellant.

Gordon Rees Scully Mansukhani, Don Willenberg and Amber A. Eklof for Defendant and Respondent.

## INTRODUCTION

A former student alleges she was the victim of discrimination while she was pursuing a doctorate at the University of California Los Angeles (UCLA). She filed suit against UCLA as well as several individual faculty members alleging violations of the Unruh Civil Rights Act (Unruh Act or the Act). The trial court sustained the university's demurrer to the student's claims, finding UCLA is not subject to the Unruh Act. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Our summary of facts is limited to those pled in the complaint and matters that have been judicially noticed. (*Barnett v. Fireman's Fund Ins. Co.* (2001) 90 Cal.App.4th 500, 504–505; *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.)

A. *Nartey's Complaint*

Plaintiff and appellant Myralyn OA Nartey (Nartey) filed her original complaint on August 12, 2019. Her complaint alleged eleven causes of action against defendant and respondent The Regents of the University of California (the Regents) and individual defendants Paula Tavrow (Tavrow), Hilary Godwin (Godwin), and Michael Prelip.[1] The following factual allegations are taken directly from Nartey's complaint.

---

[1]     Specifically, Nartey's complaint asserted causes of action for gender discrimination (first and fourth causes of action), marital status discrimination (second and fifth causes of action), racial discrimination (third and eighth causes of action), gender discrimination (seventh cause of action), retaliation (ninth cause of action), unfair business practices under Business and Professions Code section 17200, et seq. (tenth cause of action), and intentional infliction of emotional distress (eleventh cause of action).

Nartey was born in the United States to parents of African descent. Nartey began the doctoral program at UCLA's Fielding School of Public Health in 2009. She advanced to doctoral candidacy in 2014. At an unspecified time, she was told that she would need to replace her committee chair if she wanted to defend her dissertation. The new committee instructed Nartey to "throw away" her entire dissertation and start anew. The new committee forced her to prepare a detailed analytic plan on short notice, which was not required of other candidates. The committee deemed her plan inadequate and recommended that she be disqualified from doctoral candidacy based on her "lack of progress towards the degree and failure to make timely and substantive progress" in completing her dissertation. Nartey appealed her disqualification, and her appeal was denied.

At unspecified times during her tenure as a doctoral student, Nartey was "subjected to repeated gender stereotyping and several inappropriate comments about her family structure." These comments included suggestions that having children was bad for Nartey's career and that she would have to sacrifice time with her children to get her dissertation work approved. Other comments were directed at Nartey's husband and his ethnicity. Tavrow also commented on Nartey's appearance.

In December 2017, Nartey sent an email to Godwin—who at the time held the position of Assistant Dean—stating that she was experiencing harassment based on gender and family responsibility. Following this email complaint, Tavrow retaliated against Nartey by staying late at work to research recently published articles that Nartey would have to address in her dissertation.

Nartey was also repeatedly questioned about her capacity to write and speak English, her first language. On multiple occasions she was "compared

3

to a student of a similar ethnic background." In meetings, she was subjected to comments that stated she did not have the capacity to complete a doctoral program and was "just slow."

After initially instructing Nartey not be not to be concerned about completing citations until the final stages of the dissertation process, Godwin used one of Nartey's incomplete citations as the basis to accuse Nartey of plagiarism during the appeal of her disqualification from the program.

These allegations are incorporated into every cause of action asserted in Nartey's original complaint.

B. *The Regents' Demurrer*

The Regents filed a demurrer and a motion to strike Nartey's complaint. The Regents' demurrer argued, among other things, that (1) Nartey had failed to exhaust her administrative remedies before filing suit, (2) to the extent Nartey's complaint was challenging her disqualification from the doctoral program, she was required to pursue such a challenge by way of writ petition, (3) UCLA was not subject to the Unruh Act and could not be held liable for Nartey's claims arising from the Act, and (4) Nartey's complaint failed to allege sufficient facts to constitute a cause of action against the Regents.

The trial court sustained the Regents' demurrer to Nartey's ninth, tenth, and eleventh causes of action without leave to amend, finding the Regents were immune from liability on these causes of action under Government Code section 815 and because government entities are not subject to claims under Business and Professions Code section 17200, et seq.

The trial court also found multiple grounds to sustain the demurrer to Nartey's first through eighth causes of action with leave to amend. First, the

4

court determined Nartey had failed to properly allege that she had exhausted her administrative remedies before filing suit. Specifically, the court held Nartey did not show she complied with the procedures outlined in UCLA's Grievance Procedure 230.1. The court held "UCLA Procedure 230.1 does not apply to academic decisions regarding dismissal; it relates to alleged discrimination by the University, which Plaintiff alleges occurred before she was disqualified from her program. Given all of Plaintiff's causes of action appear to arise from purported discrimination by Defendant, Plaintiff was required to exhaust the grievance procedure set forth in UCLA Procedure 230.1."

The trial court also found Nartey's first through eighth causes of action failed to allege sufficient facts to state a claim against the Regents. Specifically, the court held that merely alleging discriminatory statements were made is insufficient to state a claim for discrimination without allegations of damages flowing from discrimination. The court stated it could not determine the precise nature of Nartey's claimed damages as her first through eighth causes of action do not identify the specific conduct that underlies each cause of action and instead simply incorporate by reference all allegations in the complaint.

The court also held that Nartey's complaint appeared to be seeking damages for the discrimination she suffered while enrolled in the doctoral program rather than challenging the decision to disqualify her from the program and seeking reinstatement. However, the court cautioned Nartey that if she was alleging improper disqualification from the program, she was required to seek review of that decision by way of a writ of mandate rather than by lawsuit.

5

The trial court denied the Regent's motion to strike as moot given its ruling on the demurrer.

### C. *Nartey's First Amended Complaint*

Nartey filed a first amended complaint alleging eight causes of action against the Regents and individual defendants.[2]  The first amended complaint added two paragraphs responding to the trial court's finding that Nartey failed to exhaust her administrative remedies before filing suit.  In these paragraphs, Nartey claimed she was not required to exhaust administrative remedies because her claims arise under the Unruh Act and "there is no administrative exhaustion requirement" for claims brought under the Act.  She also asserted UCLA Grievance Procedure 230.1 is inapplicable to her claims because by its terms it does not apply to claims of discrimination concerning grading and evaluation.  Nartey alleged her claims in this action all stem from discrimination she faced in the grading and evaluation of her work in the doctoral program.

Nartey's first amended complaint also claimed that she did, in fact, exhaust all her administrative remedies by emailing school officials and filing complaints with the Discrimination Prevention Office and Title IX Office within the UCLA Office of Equity, Diversity and Inclusion.

The substance of the individual causes of action asserted in the first amended complaint is nearly identical to those in her original complaint.  No changes were made to the first amended complaint to address the trial court's finding that the original complaint failed to state facts sufficient to constitute a cause of action against the Regents.  The first amended complaint contains

---

[2]     These eight causes of action are identical to the first eight causes of action asserted in Nartey's original complaint.

the same factual allegations which are incorporated into every cause of action without identifying what specific facts each cause of action is based on.

D. *The Regents' Second Demurrer*

The Regents filed a demurrer to Nartey's amended complaint. In their demurrer, the Regents again argued Nartey had failed to exhaust her administrative remedies before filing suit, that the Regents could not be held liable under the Unruh Act, and that Nartey failed to set forth sufficient facts to constitute a cause of action against them for discrimination.

On September 2, 2021, the trial court issued an order sustaining the Regents' demurrer to all causes of action in the first amended complaint without leave to amend. The court acknowledged the first amended complaint now specially alleged Grievance Procedure 230.1 did not apply but held Nartey did "not allege her disqualification from the doctoral program was the result of Defendant's discrimination, aside from a conclusory statement to that effect." The court also noted the amended complaint "fails to specifically allege Defendant's discrimination applied to decisions regarding admission, grading and evaluation, or dismissal, which would place Plaintiff's claims outside of the Grievance Procedure as an 'academic decision.'" The trial court found Nartey's amended complaint failed to link any of the alleged discriminatory statements to any "improper academic decisions by Defendant that resulted in her disqualification from the doctoral program." The trial court concluded Nartey's claims were thus subject to Grievance Procedure 230.1. The court determined the amended complaint failed to show that Nartey had complied with Grievance Procedure 230.1 or was otherwise excused from exhausting this administrative remedy. The court sustained the demurrer without leave to amend, noting it had

7

previously granted Nartey leave to amend to cure this defect and she had failed to do so.

The court also sustained the Regents' demurrer on the alternative ground that all of Nartey's causes of action arose under the Unruh Act, and the university was not a "business establishment" that was subject to the Act. The court further held Nartey's amended complaint failed to set forth sufficient facts to constitute a cause of action against the Regents for the same reasons as set forth in its prior ruling. Finally, the trial court found to the extent that Nartey was challenging the decision to disqualify her from the program, her claims were barred because she was required to seek such review by way of a writ petition and had not done so.

### E. *Judgment and Appeal*

On September 28, 2021, the trial court entered judgment for the Regents against Nartey. Nartey timely appealed. On appeal, Nartey argues the trial court erred in sustaining the Regents' demurrer to her first amended complaint.

## DISCUSSION

### A. *Standard of Review*

A demurrer tests the legal sufficiency of the challenged pleading. (*Milligan v. Golden Gate Bridge Highway & Transportation Dist.* (2004) 120 Cal.App.4th 1, 5.) We review de novo a trial court's ruling on a demurrer. (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 51.) In our review, "We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters that are judicially noticeable." (*Genis v. Schainbaum* (2021) 66 Cal.App.5th 1007,

1015.)  However, we do not credit "''"contentions, deductions or conclusions of fact or law.'''" (*Evans v. City of Berkeley, supra,* 38 Cal.4th at p. 6.)  We affirm "'if proper on any grounds stated in the demurrer, whether or not the court acted on that ground.'" (*Hoffman v. Smithwoods RV Park, LLC* (2009) 179 Cal.App.4th 390, 399.)  The appellant bears the burden of demonstrating the trial court erred in sustaining the demurrer.  (*Id.* at pp. 399–400.)

We review the denial of leave to amend a pleading after the sustaining of a demurer for an abuse of discretion.  (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 970–971; *City of Torrance v. Southern California Edison Co.* (2021) 61 Cal.App.5th 1071, 1091.)  When a trial court sustains a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  If we find an amendment could cure the defect, we conclude the trial court abused its discretion and we reverse.  (*Ibid.*)  The appellant has the burden of proving that an amendment would cure the defect.  (*Ibid.*; see *Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

B.  *Unruh Act*

Nartey's first amended complaint expressly states that her entire action "is brought pursuant to the Unruh Civil Rights Act, Section 51 et seq. of the California Civil Code."  In ruling on the Regents' demurrer, the trial court found all of Nartey's claims against the Regents were barred because UCLA was not a "business establishment" which was subject to the Unruh Act.  On appeal, Nartey does not contest that all of her causes of action arise under the Unruh Act.  Instead, she argues the trial court erred in finding the university is not subject to the Act.

9

The Unruh Act provides: "All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, subd. (b).) The question before us is whether the trial court erred when it found UCLA is not subject to the Act. We find the trial court correctly determined UCLA is not a "business establishment" for purposes of the Unruh Act.

It is undisputed that UCLA is a public school.[3] (See *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 619 ["UCLA is a public entity"].) In *Brennon B. v. Superior Court* (2022) 13 Cal.5th 662 (*Brennon*), our California Supreme Court held public school districts cannot be deemed "business establishments" that are subject to the Unruh Act. As *Brennon* is directly relevant to the question raised by Nartey's briefing, we will discuss the case in depth.

The *Brennon* court began its analysis by turning to the plain language of the Unruh Act, finding the "everyday meaning of 'business establishments'—even with the statute's expansive 'of every kind whatsoever' clause—conveys reference to commercial entities, those whose principal mission is the transactional sale of goods or services." (*Brennon, supra*, 13 Cal.5th at p. 674.) The court noted "A public school district engaged in the task of educating its students does not easily fit within" this understanding

---

[3]    Nartey's operative complaint expressly alleges UCLA is "a public entity" which is "open to and offers educational services to members of the public."

10

as "a school district's provision of public education is not generally understood as being carried out in the commercial, transactional manner that is characteristic of a 'business establishment.'" (*Ibid.*)

However, the court found that "whether or not an entity is 'generally thought of as a traditional business establishment is not, in itself, necessarily determinative of whether such an entity falls within the aegis of the act.' [Citation.]" (*Brennon, supra,* 13 Cal.5th at p. 674.)  The court then turned to the purpose and legislative history of the Unruh Act, finding "that the focus of the Act is the conduct of *private business establishments*" and the Act's legislative history "suggests the Legislature did not intend the Act to subject public school districts to liability." (*Id.* at p. 675.)  The court also noted that, as initially drafted, the Unruh Act "mentioned schools as one of the numerous entities covered by the bill," before undergoing a series of amendments "which ultimately eliminated reference to schools altogether." (*Id.* at pp. 676–677.)  The *Brennon* court additionally stated that "the Legislature is capable of bringing government entities within the scope of specific legislation when it intends to do so, and it *has* done so with other antidiscrimination legislation" such as the California Fair Employment and Housing Act.  (*Id.* at p. 678.)

Ultimately, our California Supreme Court reasoned that "in order to be a 'business establishment' under the Act . . . an entity must operate as a business or commercial enterprise when it discriminates." (*Brennon, supra,* 13 Cal.5th at p. 679.)  Accordingly, the court concluded that the Unruh Act "is not directed at school districts when they are acting to fulfill their educational role." (*Id.* at pp. 680–681.)  "In parsing the boundaries of what constitutes a 'business establishment,' our cases have focused on attributes—performing business functions, protecting economic value, operating as the

11

functional equivalent of a commercial enterprise, etc.—that are not shared by public school districts engaged in the work of educating students. When acting in their core educational capacity, public school districts do not perform 'customary business functions,' nor is their *overall function . . .* to protect and enhance . . . economic value.' [Citation.]" (*Id.* at p. 681.)

The Regents rely on *Brennon* in arguing they are not subject to liability under the Unruh Act. By contrast, Nartey's briefing before us references the now superseded lower appellate court opinion in *Brennon* without offering any discussion of the California Supreme Court decision. In arguing that the university is subject to the Unruh Act, Nartey relies primarily on the assertion that because UCLA generates substantial revenue through sources such as its athletic department, it is a business enterprise for purposes of the Unruh Act. We note these factual allegations regarding UCLA's sources of revenue do not appear in Nartey's first amended complaint and Nartey did not request the trial court take judicial notice of these alleged facts in ruling on the Regents' demurrer. As such, Nartey cannot rely on these factual assertions to establish the trial court erred in ruling on the Regents' demurrer. (*Genis v. Schainbaum*, *supra*, 66 Cal.App.5th at p. 1015.)

Even if these facts were properly before the court, however, they would not lead us to conclude that the Regents are subject to the Unruh Act. As the *Brennon* court made clear, an entity is only subject to the Unruh Act if it discriminates in its capacity as a business or commercial enterprise. (*Brennon*, *supra*, 13 Cal.5th at p. 679.) Here, all of Nartey's causes of action arise from her treatment as a doctoral candidate in UCLA's Fielding School of Public Health. Nartey has not alleged that her claims implicate athletics, intellectual property, or any other alleged business or commercial enterprise undertaken by UCLA. Instead, by her own admission, Nartey's claims arise

12

solely from the "grading and evaluation" of her work as a student in the School of Public Health. Her first amended complaint specifically alleges "The principal purpose of UCLA is education. As an educational institution, as a matter of law, pursuant to the California Education Code, the primary purpose of UCLA is to provide educational services to its students."

Under *Brennon*, when public schools are "acting in their core educational capacity," they are not subject to the Unruh Act. (*Brennon, supra*, 13 Cal.5th at p. 681.) The grading and evaluation of Nartey's work as a student is squarely within UCLA's core educational capacity. As Nartey's claims all arise from UCLA's activity as an institution of public education, the trial court correctly determined the Regents could not be held liable for Nartey's claims under the Unruh Act. We thus affirm the trial court's sustaining of the Regents' demurrer.

As Nartey has made no showing that this defect could be cured by further amendment, the trial court correctly sustained the Regents' demurrer without leave to amend. (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436 ["Leave to amend should be denied where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law"].) We note Nartey does not contend the trial court erred in determining all of her causes of action arise under the Unruh Act, nor has she alleged there are alternative statutory grounds upon which she could base her claims if given further leave to amend. "Ultimately, it is plaintiff's burden as appellant to show grounds for reversal. [Citation.] Since plaintiff ignores the issue on appeal, so shall we." (*Claudio v. Regents of University of California* (2005) 134 Cal.App.4th 224, 230, fn. 4.)

Accordingly, we do not reach the question of whether Nartey's causes of action arising from the Unruh Act could be restated under an alternative

13

legal basis. "'The burden of showing that a reasonable possibility exists that amendment can cure the defects remains with the plaintiff; neither the trial court nor this court will rewrite a complaint. [Citation.] Where the appellant offers no allegations to support the possibility of amendment and no legal authority showing the viability of new causes of action, there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend.'" (*Total Call Internat., Inc. v. Peerless Ins. Co.* (2010) 181 Cal.App.4th 161, 173.) We, therefore, find the trial court did not abuse its discretion in denying Nartey further leave to amend the operative complaint.

Having determined the trial court properly sustained the Regents' demurrer without leave to amend on this basis, we need not address the other potential grounds set forth in the Regents' demurrer and decline to do so.

## DISPOSITION

The judgment entered in favor of the Regents is affirmed. The Regents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


ZUKIN, J.

We concur:



CURREY, P. J.                    COLLINS, J.

14