Filed 10/3/16  Nicolosi Distributing v. Annex Santa Clara CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| NICOLOSI DISTRIBUTING, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ANNEX SANTA CLARA INC. et al., <br><br> Defendants and Respondents. | A145232 <br><br> (San Mateo County <br> Super. Ct. No. CIV522307) |

Appellant Nicolosi Distributing, Inc. (Nicolosi) is a distributor of automotive paint to Bay Area auto shops.  Nicolosi filed a verified complaint and verified first amended complaint against two sets of defendants:  one, another distributor of automotive paint, and thus a competitor of Nicolosi; the other, owners and operators of a large number of body shops, and thus purchasers of paint.  The essence of the verified claims was that defendants entered into an illegal rebate scheme relating to the sale of automotive paint, specifically that the custom and practice "for a typical large body shop" was a 20 to 30 percent discount off the manufacturer's list price but the defendants' body shops were actually paying more than list price and later receiving the standard industry discount as a "secret rebate" in the form of a check for 50 percent of the invoiced amount.

Nicolosi conducted extensive discovery in an attempt to find evidence supporting its claim of an illegal rebate scheme.  To no avail, as the discovery confirmed that the body shops were receiving the standard industry discounts.

Nicolosi filed an unverified second amended complaint alleging that the "industry standard" for a large body shop was really between 40 to 45 percent off the

1

manufacturer's list price, not the 20 to 30 percent as previously alleged. And, Nicolosi's new pleading alleged, because the discount level is lower than the new industry standard, the body shops "must be" receiving the difference as a "secret commission/unearned discount and/or secret rebate."

Defendants demurrered to the second amended complaint on the fundamental basis it was a sham pleading. The trial court agreed, and sustained the demurrer without leave to amend. Nicolosi filed a "Motion for Reconsideration, Alternative Motion for Leave to File Third Amended Complaint," accompanied by a proposed third amended complaint, essentially repeating the identical allegations as in the second amended complaint. The trial court denied the motion, and entered judgment dismissing the action. We affirm.

## BACKGROUND
### The Parties

Appellant Nicolosi is a California corporation that distributes automotive paint to body shops in the San Francisco Bay Area. Respondents are the six defendants named by Nicolosi in its verified complaints. One respondent is Annex Santa Clara, Inc., also known as Annex Automotive and Industrial Finishes (Annex), also a distributor of automotive paint and thus a competitor of Nicolosi. The other respondents are a group that owns and operates some 13 body shops in the Bay Area and purchase automotive paint from distributors: Bobby Ali, Rick Ali, AW Collision, Inc., Autowest Collision Repairs, Inc., and M1 Auto Collision Center (collectively, the Ali defendants).

### The Verified Complaints

On June 14, 2013, Nicolosi filed a verified complaint and thereafter a verified first amended complaint that repeated essentially verbatim the allegations in the original. As pertinent here, both verified complaints alleged the following:

Paint manufacturing companies publish a "refinisher" price list, establishing the prices to be charged by distributors to body shops (the refinishers). And larger shops, such as the Ali defendants, would get a volume discount of 20 to 30 percent off the refinisher price.

Before December 2007, Annex was selling to the Ali defendants at about 20 percent below the refinisher price. In December 2007, Annex agreed to invoice the Ali defendants at a price approximately 20 percent above the refinisher price, and then sent a payment of approximately 50 percent of the invoiced amount to those defendants. The net price was 30 percent below the refinisher price, acknowledged to be standard in the industry. Payment was via a check made payable to an individual of Rick Ali's choosing, and the secret rebate arrangement allowed Rick Ali to "pump up" his company's expenses while reducing the company's net income, and thus reduce the company's overall tax liability in violation of various tax statutes.

Both verified complaints alleged three causes of action: (1) intentional interference with prospective economic advantage; (2) violation of Business and Professions Code section 17200; and (3) violation of Business and Professions Code section 17245. The first cause of action was alleged only against Annex, the second and third against all defendants.

### Nicolosi Conducts Discovery

For well over a year, Nicolosi conducted discovery in pursuit of its verified claim. Such discovery included Nicolosi's review (pursuant to protective order) of defendants' "invoices, check registers for payments of those invoices," as well as review of similar records of Axalta/DuPont (Axalta), the manufacturer of the paint. Nicolosi also took numerous dispositions, including those of Axalta employees Mark Vaughn and Trevor Anthony, and the custodians of records for Annex and the Ali defendants. And Nicolosi hired an expert to conduct an analysis of the actual invoices between Annex and the Ali defendants and the check registers. That discovery did not support the illegal scheme alleged in the two verified complaints.

### The Second Amended Complaint

On December 9, 2014, Nicolosi filed an unverified second amended complaint (SAC) that expressly conceded that discovery had disproved its verified allegations. The SAC then alleged as follows:

3

The invoices reflect that Annex sells paint to the Ali defendants at 17.5 percent below the refinisher price. Axalta employees Vaughn and Anthony testified that the Ali defendants also receive an advanced discount of 11 percent directly from Axalta, specifically, $1 million up front based on predicated paint sales of approximately $9 million. Vaughn and Anthony also testified that Axalta gives an additional five percent rebate to Annex, from which the Ali defendants benefit.

The SAC went on to allege that the standard discount for large shops such as the Ali defendants is 40 to 45 percent, not 20 to 30 percent as previously alleged under penalty of perjury.[1] And, the SAC continued, the Ali defendants "must be" receiving this new discount of 45 percent, and assumes they are receiving "the difference between" the discounts demonstrated in discovery and the 45 percent discount "in the form of a secret commission/unearned discount and/or secret rebate."

The SAC alleged the same three causes of action as before.

### The Demurrer to the Second Amended Complaint Is Sustained Without Leave to Amend

The Ali defendants demurrered to the second and third causes of action in the SAC. Annex joined in the demurrer. The demurrer argued that the SAC was a sham, that Nicolosi was bound by its prior allegations to the contrary. Defendants also argued that Nicolosi failed to demonstrate the requisite elements of a section 17045 or a section 17200 claim, and that, after conducting discovery for almost two years before filing the SAC, Nicolosi could not show a reasonable probability that this pleading could be cured.

Nicolosi filed opposition, defendants a reply, and the demurrer came on for hearing on January 30, 2015.

At the hearing, Nicolosi's counsel agreed that the SAC alleged that the Ali defendants were receiving a 20 to 30 percent discount, a discount level that had been confirmed by the discovery it had conducted. Counsel further admitted that Nicolosi had no evidence to substantiate its earlier allegations of a secret rebate or, indeed, that the Ali

---

[1] At other points, the SAC repeats a verified allegation that the standard discount for large shops is 20 to 30 percent off the refinisher price.

4

defendants were receiving any discount or rebate beyond that demonstrated by the discovery. Instead, Nicolosi's counsel acknowledged that he was merely assuming that "the difference between what the documents show and what we believe to be the real [discount of 40 or 45 percent] is the secret rebate." Pressed by the trial court to explain where the 45 percent came from, Nicolosi's counsel stated only that he had gleaned that range "[f]rom the industry standards," and that "given [the Ali defendants'] size, its years in business, its sophistication, the high quality of cars it does, stuff like that, the [standard industry discount] range really is more like 40 to 45."[2]

On February 4, 2015, the trial court entered its order sustaining the demurrer to the SAC, concluding that the SAC failed to plead facts showing an unlawful rebate arrangement between Annex and Ali Respondents. Noting that the SAC was devoid of any factual allegations demonstrating that the Ali defendants were in fact receiving any secret rebate, the court found that "[i]t is not reasonable to infer that the [Ali defendants] are participating in a secret rebate arrangement simply because the Ali Defendants receive less than the standard discount." In any event, the court continued, "the allegations in Nicolosi's prior pleadings and the operative SAC demonstrate that the Ali Defendants' discount level *was* within the industry standard." Finally, the court concluded, that Nicolosi "presented no 'offer of proof' of any additional factual evidence to support the existence of a secret rebate[.]" The court thus sustained the demurrer without leave to amend.

### Annex Moves for Judgment on the Pleadings, Which the Court Grants Without Leave to Amend

On February 10, following the ruling on the demurrer, Annex moved for judgment on the pleadings on the remaining claim, the first cause of action for interference with prospective economic advantage. The motion argued that the sole basis of the claim was the dismissed "secret rebate" claim.

---

[2] Since Nicolosi is in the industry and alleged that the Ali defendants had been its customers for years, it would have necessarily had this information when it filed its first two verified complaints alleging that the standard industry discount was 20 to 30 percent and that Ali defendants were "secretly" receiving such a discount from Annex.

Nicolosi filed opposition, in which Nicolosi attempted to explain the inconsistent allegation regarding the standard industry discount.

The motion came on for hearing on March 9, at which the court heard extensive argument. The court thereafter entered a detailed order granting the motion, in the course of which the court summarized Nicolosi's claimed explanation for the inconsistency[3]— and then rejected the explanation out of hand: "The prior pleadings clearly asserted that the Ali Defendants were subject to the standard large body shop discount of 20–30%. Until this SAC, the gravamen of this action has been that the Ali Defendants were entitled to the standard large body shop discount of 20–30% off the refinisher price, and the unlawful rebate arrangement allowed the Ali Defendants to secretly receive the standard discount while also reducing their overall tax liability. . . . [¶] Exhibit B to the declaration of Mr. Franck in no way establishes that Ali Defendants received a discount of 40–45%. Exhibit B is email from Carlos McKenna, a representative from Axalta, to Plaintiff. Mr. McKenna wrote, 'I just want to make clear that we will only contribute to the discount after the jobber meets the first 20 percent discount. I can do up to 6 percent depending on the shop's volume and any further discount will require approval from Trevor Anthony and Mark Vaughn.' (Franck Decl., Exh. B at P001.) Mr. McKenna's email does not create a reasonable inference that the Ali Defendants[] received a discount of 40–45% . . . off the refinisher price. Mr. McKenna only stated that a body shop may receive a 6% discount from Axalta in addition to the 20% discount provided by the 'jobber' (here, Annex) with any further discounts requiring the approval of two Axalta employees, Trevor Anthony and Mark Vaughn. . . . According to the SAC, Mr. Vaughn and Mr. Anthony's testimony along with invoices demonstrate that the Ali Defendants

---

[3] This is how the court described it: "Plaintiff argues it has never asserted that the Ali Defendants were subject to a 20–30% discount. Plaintiff argues the prior pleadings alleged only that the standard discount is 20–30%. Plaintiff argues that the Ali Defendants are 'elite' and not 'standard' clientele, therefore the Ali Defendants received a larger discount of 40–45 % as alleged in the SAC. Plaintiff argues Exhibit B to the declaration of Mr. Franck is an 'offer of proof' that the Ali Defendants received a larger discount of 40–45%."

6

receive a 22.5% discount from Annex and an additional 11% advanced rebate directly from Axalta. ([Citing,] SAC ¶¶ 60, 63–67.)"

The court granted the motion without leave to amend, and on March 9 entered an order holding that the "independently wrongful" element of the cause of action was not satisfied following the dismissal of the secret rebate claim.

**Nicolosi Moves for Reconsideration<br>and for Leave to File a Third Amended Complaint**

Meanwhile, on February 19, Nicolosi filed a "Motion for Reconsideration, Alternative Motion for Leave to File Third Amended Complaint." The motion set forth three claimed "new facts" justifying reconsideration: (1) the court "misunderstood" the first two verified complaints as indicating that Ali Respondents "would be subject to standard industry discount [of] 20–30% off refinisher price"; (2) Nicolosi's counsel "explained during the hearing that [Ali defendants] was a high class operation, with multiple locations" and would thus "be entitled to a higher level discount in the range of a 40–45% discount"; and (3) the court incorrectly found that Nicolosi presented "no offer of proof of any additional factual evidence to support the existence of a secret rebate greater than typical industry standards" because the "offer of proof is that this high class status entitles them to a much larger than standard discount[.]" The motion was accompanied by a "[Proposed] Third Amended Complaint" which, aside from denying that its new allegations were inconsistent with those in the first two verified complaints, contained verbatim the same material allegations as the SAC.

On March 10 and 11, the defendants filed their oppositions. They argued that (1) the same arguments made by Nicolosi had also been presented in response to the demurrer and (2) the proposed third amended complaint contained identical factual allegations to the SAC, and thus no grounds for reconsideration.

On March 16, Nicolosi filed its reply. It argued that even if no new facts or evidence were presented, the court has "continuing judicial powers to change any of its entered orders"; and, without citation or discussion, stated it "hopes it has cured any of the defects noted by the Court in it [sic] ruling on [the] demurrer to the [SAC]."

7

Hearing on the motion was held on March 23, following which the court entered an order denying reconsideration and leave to file the proposed third amended complaint. Judgment of dismissal was entered on April 6, from which Nicolosi filed a timely appeal.

## DISCUSSION

As noted, two of Nicolosi's claims were dismissed on demurrer, the third on judgment on the pleadings. The standard of review is the same, as we confirmed in *Caldera Pharmaceuticals, Inc. v. Regents of University of California* (2012) 205 Cal.App.4th 338, 350:

"A motion for judgment on the pleadings, made after the time for a demurrer has expired, in all other respects is the equivalent of a general demurrer. Like a demurrer, grounds for the motion must appear on the face of the complaint or be based on facts capable of judicial notice. We review the complaint de novo to determine whether the complaint states a cause of action, as a matter of law." (*Bufil v. Dollar Financial Group, Inc.* (2008) 162 Cal.App.4th 1193, 1202.) In conducting this review, we accept, and liberally construe, the truth of the complaint's properly pled factual allegations, but not contentions, deductions, or conclusions of fact or law. (*Gerawan Farming, Inc. v. Lyons* (2000) 24 Cal.4th 468, 515–516; *Sprague v. County of San Diego* (2003) 106 Cal.App.4th 119, 127.) We are not concerned with [Nicolosi's] ability to prove its allegations, only whether its second amended complaint shows that it makes out a claim for some relief. . . ." (*Frances T. v. Village Green Owners Assn.* (1986) 42 Cal.3d 490, 496, fn. 2; *Matteson v. Wagoner* (1905) 147 Cal.739, 742; *Grain v. Aldrich* (1869) 38 Cal. 514, 520.)"

### The Law of Sham Pleading

This court explored the "sham pleading" doctrine in *Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946: " 'Generally, after an amended pleading has been filed, courts will disregard the original pleading. [Citation.] [¶] However, an exception to this rule is . . . where an amended complaint attempts to avoid defects set forth in a prior complaint by ignoring them. The court may examine the prior complaint to ascertain whether the amended complaint is merely a sham.' [Citation.]

8

The rationale for this rule is obvious. 'A pleader may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.' [Citation.] Moreover, any inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the inconsistent allegations. [Citation.] Accordingly, a court is 'not bound to accept as true allegations contrary to factual allegations in former pleading in the same case.' [Citation.]" (See also *Reichert v. General Ins. Co.* (1968) 68 Cal.2d. 822, 836–837; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 1190, pp. 621–622.)

As our Court of Appeal succinctly put it, a party is "not . . . allowed to amend the complaint to state a fact directly contradictory to one stated previously. '[A] plaintiff may not discard factual allegations of a prior complaint, or avoid them by contradictory averments, in a superseding, amended pleading.' [Citation.]" (*Continental Ins. Co. v. Lexington Ins. Co.* (1997) 55 Cal.App.4th 637, 646.)

In essence, under the "sham pleading" doctrine the court takes judicial notice of the prior pleadings and requires the pleader to adequately explain the inconsistency. If the pleader fails to do so, the court disregards the inconsistent allegations and reads into the amended complaint the allegations of the superseded complaint. (*Chavez v. Times-Mirror Co.* (1921) 185 Cal. 20, 23 [complaint should be read as containing the judicially noticeable facts, "even when the pleading contains an express allegation to the contrary"]; *Hendy v. Losse* (1991) 54 Cal.3d 723, 742–743 [affirming order sustaining demurrer without leave to amend when amended complaint omitted harmful allegations from original complaint]; *City of Chula Vista v. County of San Diego* (1994) 23 Cal.App.4th 1713, 1719 [judicially noticeable facts supersede inconsistent factual allegations contained in later complaint].)

## The Sham Pleading Doctrine Applies Here

As noted, the trial court applied the sham pleading doctrine to Nicolosi's inconsistent allegations in the SAC. We agree, as Nicolosi has provided no explanation, let alone a reasonable one, for its inclusion of the new industry standard in the SAC.

Nicolosi asserts, however incoherently, that "it has never asserted that the Ali defendants were subject to a 20–30% discount," and that prior pleadings alleged only that the "standard discount" is 20 to 30 percent. And, Nicolosi claims, the trial court "misinterpreted the initial complaint in this action as being inconsistent with the allegations of the SAC." Nicolosi's argument is myopic. It ignores its own verified pleadings.

As the trial court aptly noted, "[t]he prior pleadings clearly asserted that the Ali Defendants were subject to the standard large body shop discount of 20–30%". Indeed, Nicolosi's first two verified complaints go so far as to allege that "[L]arger shops, *such as [the Ali defendants]* would get a large volume discount . . . between 20–30% off [the] refinisher price." (Italics added.)

The verified allegations also alleged that Ali defendants are invoiced at 50 percent above refinisher price, and then receive the standard industry discount of "30% below refinisher price" as a secret rebate. By contrast, the SAC alleged that Ali defendants were invoiced for 17.5 percent less than the refinisher price; that they received an additional five percent discount on their purchases; and that they received a $1 million "advance discount" based on predicted paint sales of approximately $9 million, which is equivalent to a "discount . . . equal to $1/9 = 11\%$."

Based on all that, the trial court concluded, and properly, that "[Nicolosi] admits that discovery has shown [that the scheme alleged in the first pleadings] does not exist." Rather, the court continued, "the allegations in [Nicolosi's] prior pleadings and the operative SAC demonstrate that the Ali [defendants'] discount level was within the industry standard."

Apparently undaunted, Nicolosi attempted to salvage its lawsuit by altering its charging allegations. Thus, the SAC claims that the standard industry discount is "at

10

least 45%," not 20 to 30 percent as previously alleged. And it assumes that the defendants "must be" secretly receiving a 45 percent discount—not the "approximately 30%" previously alleged. Nicolosi has never explained these inconsistent allegations, contenting itself with a position that it never alleged that the 20 to 30 percent discount applied to the Ali defendants in the first place.

In sum, Nicolosi's SAC fails under the sham pleading doctrine. But even if it did not, it would fail on the merits, as no valid claim is pled under any of the three causes of action.

### The SAC Does Not State a Claim for Violation of Business and Professions Code Section 17045

Nicolosi's third cause of action alleged violation of Business and Professions Code section 17045 (Section 17045), which provides as follows: "The secret payment or allowance of rebates, refunds, commissions, or unearned discounts, whether in the form of money or otherwise, or secretly extending to certain purchasers special services or privileges not extended to all purchasers purchasing upon like terms and conditions, to the injury of a competitor and where such payment or allowance tends to destroy competition, is unlawful."

"[T]here are three elements to a violation of section 17045. First, there must be a 'secret' allowance of an 'unearned' discount. Second, there must be 'injury' to a competitor. Third, the allowance must tend to destroy competition." (*Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.* (1993) 16 Cal.App.4th 202, 212.) As the Supreme Court has noted, "By its terms, section 17045 requires the plaintiff to prove not only injury to a competitor, but, *in addition*, a tendency 'to destroy competition.' " (*ABC Internat. Traders, Inc. v. Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1262.) Finally, and utterly ignored by Nicolosi here, a section 17045 claim is subject to a heightened *pleading standard*, requiring a plaintiff to "state with reasonable particularity the facts supporting the statutory elements of the violation." (*Khoury v. Maly's of California, Inc.* (1993) 14 Cal.App.4th 612, 619.)

11

Nicolosi's SAC does not measure up: it fails to allege any of the requisite elements under any standard, let alone the heightened standard applicable here.[4]

As indicated above, the SAC alleges that discovery showed that the Ali defendants received a 22.5 percent discount (17.5 percent plus five percent), in addition to the advanced rebate from the manufacturer. And it went on, the Ali defendants "must be" receiving an actual discount of 45 percent since this is the "industry standard," and then goes on to assume that Ali defendants are receiving the "difference between" these discount levels as "a secret commission/unearned discount and/or secret rebate." Based on that, the trial court's order sustaining the demurrer expressly noted that the "SAC is devoid of factual allegations showing the Ali Defendants are in fact secretly receiving the difference between 17.5% and 45% of the refinisher price."

Despite that, Nicolosi's opening brief completely ignores this issue. Rather, Nicolosi attempts, yet again, to rewrite its allegations, asserting that the SAC alleges that Annex "issued invoices to [Ali defendants] which stated process [sic] that were false prices, the real price being significantly lower." In fact, the SAC alleges just the opposite: "[i]t has come out in pretrial discovery that the terms of trade as between [Annex] and [the Ali defendants] *are as shown in the invoices between them*, which were produced [in this action]."

Moreover, the SAC assumes a secret rebate arrangement exists because the Ali defendants are allegedly receiving less than the standard discount of 40 to 45 percent. Again, and as the trial court correctly noted, this inference is unreasonable. It cannot save Nicolosi on demurrer. (*Alexander v. Exxon Mobil* (2013) 219 Cal.App.4th 1236, 1260 ["only reasonable inference" may be drawn from allegations].)

_____

[4] This is not the first time that Nicolosi was thrown out of court because it failed to meet this heightened pleading requirement. In *Nicolosi Distrib. Co. v. Finishmaster, Inc.,* (N.D.Cal., Jan. 14, 2000, No. C99-0927MJJ) 2000 U.S. Dist. Lexis 505, at pp. *6–*9, the District Court dismissed Nicolosi's section 17045 claim, holding that it failed to satisfy the heightened pleading requirements of the unfair competition statute, relying on California law to hold that bald conclusory statements that the discounts were "secret" and "unearned" were insufficient.

Aside from alleging that the industry standard is 40 to 45 percent, the SAC contains no allegations supporting the inference that the Ali defendants are receiving a greater discount than set forth in the invoices. And review of the entirety of the SAC demonstrates just how unreasonable such speculation is.

To begin with, the SAC expressly acknowledges that Nicolosi has had the opportunity to conduct extensive discovery in this case. It then goes on to admit that this discovery showed that the "actual percentage discount" the Ali defendants received is 22.5 percent, plus an additional 11 percent from the manufacturer—not 45 percent. Indeed, the SAC expressly incorporates the Ali defendants' verified discovery responses, affirming that no other discounts, rebates, or commissions are being received other than those set forth in the records analyzed by Nicolosi's expert. In sum, Nicolosi has found no evidence that the Ali defendants' discount is greater than set forth in the invoices, much less any evidence of a "secret commission/unearned discount and/or secret rebate."

Second, the SAC alleges that before the alleged scheme, "[Annex] was already selling Paint and nonpaint products at approximately 20% below refinisher price to [Ali defendants]." The SAC provides absolutely no explanation as to why Annex would suddenly decide to double the discount it was providing in order to give half as a secret rebate. Instead, the SAC states that discovery showed that Ali defendants continued to receive a 22.5 percent discount from Annex.

Third, the SAC alleges that Annex and the Ali defendants entered into the secret rebate scheme in December of 2007. At the same time the SAC also alleges that the "total volume of sales by [Nicolosi] to [the Ali defendants] during the period of 2005–April 4, 2011 was approximately $4000–$5000 per month." In other words, for years after Annex and the Ali defendants allegedly entered into the scheme, the sales levels from Nicolosi remained the same.

Thus, as the trial court correctly found, there were no factual allegations showing that any secret discount is actually being received, and "[i]t is not reasonable to infer that Ali Respondents and Annex are participating in a secret rebate arrangement simply because the Ali Respondents receive less than the standard discount."

But even if Nicolosi were permitted to contradict its prior verified allegations and one could conclude that it has sufficiently alleged that the Ali defendants were actually receiving a 45 percent discount, there is an additional reason why the SAC fails to show the first element of a section 17045 claim—the alleged discount is not unearned, or secret, or discriminatory.

### *Nothing Secret, Nothing Unearned, Nothing Discriminatory*

The only reason Nicolosi "believes" that Ali defendants are receiving a 40 to 45 percent discount is because of "industry standards." In other words, Nicolosi argues, the Ali defendants are "entitled to a higher level discount in the range of a 40-45% [because they are] a multi-store autobody shop doing substantial volumes of work on elite automobiles." ["Based on the industry standards an autobody shop of the size and nature of [Ali Respondents] would be obtaining a discount level" of 45%]. If the discount is based on the size and/or the volume and/or nature of the work, it is not "unearned" as required by section 17045. And, of course, a discount or rebate consistent with "industry standards" is not "secret."

Finally, by alleging that the Ali defendants are receiving the standard industry discount, the SAC fails to allege any price discrimination, because Annex is necessarily providing this same 40 to 45 percent discount to other body shops purchasing "on like terms and conditions." (§ 17045.) In fact, the SAC expressly alleges that Annex has a "similar" arrangement "with major auto dealerships . . . and body shops in the Los Angeles area." Such failure to plead any price discrimination is fatal to Nicolosi's section 17045 claim because, as Nicolosi's own statement of the rule acknowledges: "violation requires proof that payments . . . discriminated among customers of the entity granting the rebates."

### *No Injury to a Competitor*

The SAC also fails to allege the second requisite element for a section 17045 claim—injury to a competitor. In its opening brief, Nicolosi conclusorily states, without explanation or elaboration, that the "SAC lays out facts supporting injury to competitor." Noticeably absent, however, are any such facts. And the actual facts alleged are contrary.

14

The SAC alleges that the Ali defendants and Annex entered into the secret rebate scheme in December of 2007, and goes on to allege that the "total volume of sales by [Nicolosi] to [Ali defendants] during the period of 2005-April 4, 2011 was approximately $4,000–$5,000 per month."  So, Nicolosi could not have been injured by this alleged agreement because its sales to Ali defendants continued at the same levels for more than three years after the alleged agreement.

### *No Tendency to Destroy Competitors*

The SAC also fails to allege the third requisite element of a section 17045 claim—tendency to destroy competition.

As set forth above, the SAC alleges that the Ali defendants are receiving the standard industry discount of 40 to 45 percent.  Simply, if the discount is standard within the industry—and thus the same pricing arrangement given to all—it is not anticompetitive.[5]  (*Atlantic Richfield Co. v. USA Petroleum Co.* (1990) 495 U.S. 328, 337 [competitor could not show injury due to alleged "conspiracy to raise the market price," since the competitor would be charging the market rate]; *Chicago Title Ins. Co. v. Great Western Financial Corp.* (1968) 69 Cal.2d 305, 323 [§17045 claim defective because plaintiff "fail[ed] to allege . . . that the prices charged" differed from customer to customer]; *Harris v. Capital Records etc. Corp.* (1966) 64 Cal.2d 454, 463 [dismissal affirmed where advertising allowances were extended to all purchasers purchasing on like terms and conditions].)

*E&H Wholesale, Inc. v. Glaser Bros., supra,* 158 Cal.App.3d 728, a case discussed at length in Annex's brief, is persuasive.  There, the evidence "establish[ed] that certain customers were authorized to pay prices below those specified on Glaser's invoices," and, since only some customers received the discount, the court found the discounts constituted a "secret rebate." (*Id.* at p. 738.)  Nevertheless, the court concluded that defendant did not violate section 17045 because the "discounts offered by Glaser to Par Foods and Tony's Distributing Co. tended not to destroy competition, but rather, to

---

[5] At least without a showing of competitive injury to the secondary line of commerce. (See *E&H Wholesale, Inc. v. Glaser Bros*. (1984) 158 Cal.App.3d 728, 738.)

meet the demands thereof, for in each instance, the discount was granted in order to meet offers made by competitors." (*Id.* at p. 739.) So, the court concluded, "defendants had not violated section 17045, for the instant statute does not proscribe cost reductions designed to meet the demands of the marketplace." (*Ibid.*)

As Annex aptly notes, "*E&H Wholesale* had more detrimental facts than the instant matter. Here, the SAC *does not* include allegations stating the alleged 45% rebate was only offered to some purchasers." Nicolosi's reply brief simply ignores the case.

The SAC's conclusory statement that the alleged agreement had "a clear tendency to destroy competition" does not save the claim, especially in light of the heightened pleading requirement. (See *Aubry v. Tri-City Hospital. Dist*. (1992) 2 Cal.4th 962, 966–967.) "By its terms, section 17045 requires the plaintiff to prove not only injury to a competitor, but, *in addition*, a tendency 'to destroy competition' . . . *generally*." (*ABC, Internat. Traders, Inc. v. Matsushita Electric Corp., supra*, 14 Cal.4th at p. 1262.)

### The SAC Fails to State a Claim Under Business and Professions Code Section 17200

Nicolosi's second cause of action alleged violation of Business and Professions Code section 17200 (Section 17200), which prohibits any "unlawful, unfair or fraudulent business act or practice."

Nicolosi admits its section 17200 claim is based solely on defendants' alleged violation of section 17045. Since, as described above, the section 17045 claim fails, the section 17200 claim fails with it. (*Khoury v. Maly's of California, Inc., supra,* 14 Cal.App.4th at p. 619.) Likewise because Nicolosi has not pled a requisite element of such a claim—injury in fact.

As the Supreme Court has held, due to frivolous, unfair competition lawsuits that clogged the courts, cost taxpayers, and threatened small business, " '[i]n 2004 the electorate substantially revised the UCL's standing requirement; where once private suits could be brought by "any person acting for the interests of itself, its members or the general public" [citation], now private standing is limited to any "person who has

16

suffered injury in fact and has lost money or property" as a result of unfair competition [Citation.]' " (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 320–321.)

As shown above, Nicolosi's pleading admitted that the "total volume of sales by Nicolosi to [the Ali defendants] during the period of 2005–April 4, 2011 [remained the same] was approximately $4,000–$5,000 per month." In light of this, Nicolosi's conclusory allegation that Nicolosi was "injured in fact"—an allegation without factual elaboration—cannot save the claim. (*Aubry v. Tri-City Hospital, supra*, 2 Cal.4th at pp. 966–967.)

### Judgment on the Pleadings was Properly Granted on the Claim for Intentional Interference with Prospective Economic Advantage

Nicolosi's first cause of action, alleged against Annex only, was for intentional interference with prospective economic advantage. Annex moved for judgment on the pleadings, which the trial court granted. That ruling was correct.

The tort of interference with prospective economic advantage imposes liability for "improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition." (*Settimo Associates v. Environ Systems, Inc.* (1993) 14 Cal.App.4th 842, 845.) The tort "protects the same interest in stable economic relationships as does the tort of interference with contract, though interference with prospective advantage does not require proof of a legally binding contract. [Citation.] The chief practical distinction between interference with contract and interference with prospective economic advantage is that a broader range of privilege to interfere is recognized when the relationship or economic advantage interfered with is only prospective." (*Pacific Gas & Electric Co. v. Bear Stearns & Co.* (1990) 50 Cal.3d 1118, 1126, fn. omitted.)

The tort has five elements: (1) economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of defendant.

17

(*Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29 Cal.4th 1134, 1153–1154; *Youst v. Longo* (1987) 43 Cal.3d 64, 71, fn. 6.)  And, as relied on by the trial court here, a plaintiff seeking to recover for an alleged interference with prospective advantage "must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." (*Della Penna v. Toyota Motor Sales, U.S.A., Inc.* (1995) 11 Cal.4th 376, 393.)  As the Supreme Court has explained, "an act is independently wrongful if it is unlawful, that is, if it is proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." (*Korea Supply Co. v. Lockheed Martin Corp., supra,* at p. 1159, fn. omitted.) The conduct must be "independently actionable." (*Ibid.*)

Here, the sole basis for this claim is that there was a "secret rebate" in violation of section 17045.  As shown above, the allegations in the SAC do not demonstrate the existence of a "secret rebate" arrangement, nor any anticompetitive behavior on the part of Annex.

**Denial of the Motion for Reconsideration Was Not an Abuse of Discretion**

Code of Civil Procedure section 1008 governs a motion for reconsideration, and provides in pertinent part that such motion must be based on "new or different facts, circumstances, or law" than those before the court at the time of the original ruling.  As the leading practical treatise describes it, " 'The legislative intent was to *restrict* motions for reconsideration to circumstances where a party offers the court some fact or circumstances not previously considered, and *some valid reason* for not offering it earlier. [Citations.]  [¶]  The burden under § 1008 'is *comparable to that of a party seeking a new trial* on the ground of newly discovered evidence:  the information must be such that the moving party *could not*, with reasonable diligence, have discovered or produced it at the trial.' " (Weil & Brown, Cal. Practice Guide:  Civil Procedure Before Trial (The Rutter Group 2016) ¶ 9:328, p. 9 (1)–142.)

18

We review a trial court's ruling on a motion for reconsideration for an abuse of discretion. (*Jones v. P.S. Development Co., Inc.* (2008) 166 Cal.App.4th 707, 724; *New York Times Co. v. Superior Court* (2005) 135 Cal.App.4th 206, 212.) We find none.

To recap, Nicolosi's motion for reconsideration argued three things: (1) the court "misunderstood" the first two verified complaints as alleging that the Ali defendants "would be subject to standard industry discount [of] 20–30% off refinisher price"; (2) Nicolosi's counsel "explained during the hearing that [Ali defendants] was a high class operation, with multiple locations" and would thus "be entitled to a higher level discount in the range of a 40–45% discount"; and (3) the court incorrectly found that Nicolosi presented "no 'offer of proof.' " All were properly rejected.

Nicolosi's claim that its first two verified pleadings did not allege that the Ali defendants were subject to the standard industry discount for a large body shop is, as demonstrated above, fatuous. The trial court did not "misunderstand" Nicolosi's verified allegations.

Second, the fact that Nicolosi disagrees with the trial court's interpretation of its verified pleadings does not constitute a "new or different" fact. "Since in almost all instances, the losing party will believe that the trial court's 'different' interpretation of the law or facts was erroneous, to interpret the statute as [Nicolosi] urges would be contrary to the clear legislative intent to restrict motions to reconsider to circumstances where a party offers the court some fact or authority that was not previously considered by it." (*Gilberd v. AC Transit* (1995) 32 Cal.App.4th 1494, 1500.)

Third, Nicolosi asserted that in essence the trial court "changed its mind" regarding whether Nicolosi filed a sham pleading, an argument based on an incomplete portion of the transcript from the oral argument. A reading of the cited testimony shows that the court was attempting to explain Nicolosi's confusing, if not contradictory, positions to Annex's counsel so that she could respond. In any event, even disregarding the contrary allegations in the first two verified complaints, the trial court sustained the demurrer because "the SAC is devoid of factual allegations showing the Ali Defendants

19

are in fact secretly receiving" a secret rebate. This is not "sufficient to warrant reconsideration." (*Gilberd v. AC Transit, supra*, 32 Cal.App.4th at p. 1500.)

Nicolosi's motion for reconsideration was also based on its argument that the Ali defendants are a "high class operation" and thus "would be entitled to a higher level discount in the range of a 40–45% discount, due to its special circumstance of being a multi-store autobody shop doing substantial volumes of work on elite automobiles." This is not a "new or different" fact. To the contrary, the SAC expressly alleges that: "[b]ased on the industry standards an autobody shop of the size and nature of [AW Defendants]" would be entitled to a discount level of "at least 45%."

Finally, Nicolosi's motion for reconsideration relied on an email dated July 29, 2014, indicating that some anonymous body shop might be eligible to receive a 20 percent discount from the jobber, plus "up to" a six percent discount from the manufacturer "depending on the shop's volume." This email was sent on July 29, 2014; Nicolosi filed the SAC on December 9, 2014; and Nicolosi's counsel had the email when he filed opposition to the demurrer in January 2015. The email was hardly "new." (*Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 690 [information known to attorney at time of initial opposition, without explanation of why it was not presented at that time, did not meet standard for diligence under section 1008].)

## The Proposed Third Amended Complaint Was Properly Rejected

Nicolosi's motion for reconsideration was accompanied by a proposed third amended complaint. The trial court did not allow it. Properly so.

The law as stated by Justice Sullivan for Division One of this court 50 years ago remains the law today: " 'In the furtherance of justice great liberality should be exercised in permitting a plaintiff to amend his complaint, and it ordinarily constitutes an abuse of discretion to sustain a demurrer without leave to amend if there is a reasonable possibility that the defect can be cured by amendment.' . . . But such action is not an abuse of discretion when it is clear that an amendment would not cure the defect in the complaint . . . or that a sufficient amendment would state a wholly different cause of action." (*Andrews v. Joint Clerks etc. Committee* (1966) 239 Cal.App.2d 285, 300, citations

20

omitted; also see *Mercury Casualty Co. v. Superior Court* (1986) 179 Cal.App.3d 1027, 1035.)

Applying such rules, many courts have affirmed the denial of leave to file an amended complaint. Illustrations include situations where the plaintiff has alleged facts in the original complaint that preclude the relief sought in an amended pleading: "Permitting plaintiff to amend the complaint would serve no useful purpose, given the fact that the actions of petitioner, as set forth in plaintiff's original complaint, cannot give rise to a cause of action." (*Mercury Casualty Co. v. Superior Court, supra*, 179 Cal.App.3d at p. 1035, fn. omitted; *Banis Restaurant Design, Inc. v. Serrano* (2005) 134 Cal.App.4th 1035, 1044.)

"There is no reluctance to sustain a demurrer without leave to amend where the *only* issues are legal ones and the court decides against plaintiff as a matter of law: Leave to amend *should be denied* where the facts are not in dispute and the nature of the claim is clear, but no liability exists under substantive law. [*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 436 (emphasis added); *Schonfeldt v. State of California* (1998) 61 Cal.App.4th 1462, 1465—if no liability as a matter of law, leave to amend should not be granted; *Jenkins v. JP Morgan Chase Bank, N.A.* (2013) 216 Cal.App.4th 497, 535.]" (Weil & Brown, Civil Procedure Before Trial (The Rutter Group, 2016) § 7:132, p. 7(1)–58.)

Nicolosi's proposed third amended complaint was properly refused for several reasons, especially because it merely repeats the arguments Nicolosi made in support of the motion for reconsideration, i.e., that the prior pleadings were not inconsistent and Ali was entitled to a higher discount than other large body shops. The proposed amended complaint repeats verbatim the material factual allegations contained in the SAC, including the assumption that Ali defendants "must be" receiving the difference between the discount level shown in discovery and the industry standard of 45 percent "in the form of a secret commission/unearned discount and/or secret rebate."

The proposed third amended complaint contains no new material allegations and thus would fail for the same reasons that the SAC failed. Indeed, as Nicolosi admits, the

21

TAC merely attempts to "clarif[y] the allegations" in the SAC to show "there was no inconsistency between the initial complaint and the allegations of the second amended complaint" and then repeats verbatim the factual allegations set forth in the SAC.

## DISPOSITION

The judgment is affirmed. Annex and the Ali defendants shall recover their costs on appeal.

_____
Richman, J.

We concur:

_____
Kline, P.J.

_____
Miller, J.