Filed 11/6/24  Goldstein v. SF Holding Company CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GERALD GOLDSTEIN,<br><br>    Cross-complainant and<br>    Appellant,<br><br>    v.<br><br>SF HOLDING COMPANY LLC,<br>ET AL.,<br><br>    Cross-defendants and<br>    Respondents. | B332493<br><br>(Los Angeles County<br> Super. Ct. No. 20SMCV01963) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Lisa K. Sepe-Wiesenfeld, Judge.  Affirmed.

Murphy, Pearson, Bradley & Feeney and Nicholas C. Larson, for Cross-Complainant and Appellant.

Conkle, Kremer & Engel, Mark D. Kremer, and Evan Pitchford, for Cross-Defendants and Respondents.

Appellant Gerald Goldstein (Goldstein) appeals from a judgment of dismissal sustaining the demurrer of respondents SF Holding Company LLC (SF Holding) and Allen Stephenson (Stephenson) (collectively, respondents) to Goldstein's third amended cross-complaint (TACC) without leave to amend.  The trial court concluded Goldstein's causes of action were time-barred.  Goldstein contends that because the delayed discovery rule or equitable tolling applies, his claims are timely.  He also contends the court abused its discretion in denying him leave to amend the complaint a fourth time.  We affirm.

## BACKGROUND

### A.    Procedural Background

SF Holding filed a complaint against Goldstein in December 2020.  SF Holding asserted that on August 31, 2015, Goldstein and certain related business entities executed a promissory note in favor of SF Holding in the amount of $1,247,553.55, which was due and payable on June 30, 2016.  The 2015 note was secured by a Pledge and Security Agreement.  SF Holding alleged Goldstein and the business entities breached the promissory note and security agreement by failing to make required payments.

Goldstein filed his initial cross-complaint against respondents on January 21, 2021.  After respondents demurred, Goldstein filed a first amended cross-complaint in December 2021.  Respondents then demurred to the first amended cross-complaint.  The trial court sustained the demurrer in its entirety with leave to amend.

2

Goldstein filed his second amended cross-complaint in September 2022. Pursuant to stipulation, Goldstein filed the operative TACC in May 2023.

## B. Factual Allegations of the TACC

The TACC made the following allegations. Goldstein was a music producer, singer-songwriter, and talent manager. In 2006, Goldstein and Stephenson each owned condominiums in the Wailea Beach Villas (WBV) development in Maui, Hawaii. Goldstein and Stephenson met at a party for homeowners, where they discussed a movie project on which Goldstein was working. The movie was about a 1969 Jimi Hendrix concert.

Following this meeting, Stephenson began developing a "complex and fraudulent scheme to bilk [Goldstein] out of millions of dollars as well as [Goldstein's] interest in . . . a variety of intellectual property rights, as well as real property rights, including but not limited to music royalties, exclusive movie production rights, along with rights to [Goldstein's] WBV condominiums." Stephenson put his scheme into action in June 2007, when he arranged to make a $500,000 loan through his general partnership, SF Holding's predecessor, to Goldstein. In June 2007, Goldstein executed a promissory note, which he claims was never fully funded.

Between June and November 2007, Stephenson and his agents "repeatedly and continually coerce[d Goldstein] into hiring [c]ross-[d]efendant Stephenson as a business manager." In November 2007, the parties executed a business management agreement.

In 2008, Stephenson coerced Goldstein "into executing additional fraudulent agreements by way of undue influence and

3

abuse." In December 2008, Goldstein entered into another promissory note with SF Holding's predecessor. Also in December 2008, Goldstein executed an amendment to the 2007 business management agreement that allegedly misrepresented that Goldstein still owed money under the June 2007 promissory note. Goldstein claimed he was coerced into executing the amendment to the business management agreement without the opportunity to consult counsel. The business management agreement expired in 2009.

In July 2012, Goldstein entered into a "Restated and Amended Security Promissory Note" with SF Holding. Goldstein claimed respondents threatened to destroy his business opportunities and relationships unless he executed this amended promissory note. The note "expand[ed] [respondents'] fraudulent scheme by requiring [Goldstein to] assign his rights to bi-annual royalty payments to the international hit songs 'My Boyfriend's Back' and 'I want Candy.'" On the same day, respondents allegedly coerced Goldstein into executing a "Pledge and Security Agreement." The 2012 security agreement continued respondents' "pattern and practice of failing to provide an accounting, misstating accounts, and perpetuating fraud." In March 2013, respondents "again coerced [Goldstein] by threat of financial ruin" into executing another promissory note. Goldstein was also coerced into executing a "First Amendment to Pledge and Security Agreement."

Thereafter, on August 31, 2015, respondents "forced" Goldstein, "by yet additional threats of destruction of [Goldstein's] business opportunities and relationships," into executing the 2015 promissory note. The 2015 promissory note provided it replaced the 2013 promissory note and included the

4

balance from the 2012 promissory note. Goldstein asserted the 2015 promissory note continued respondents' "pattern and practice of intimidation, deception, and misrepresentation" because the principal balance failed to account for payments made by Goldstein. Respondents, "by virtue of coercion and threat," also forced Goldstein to execute a "Second Amendment to Pledge and Security Agreement" on the same day.

Also on August 31, 2015, respondents "continued the campaign of financial abuse and fraud by using coercion to obtain, under duress, [Goldstein's] agreement to pay $500,000 in exchange for [respondents'] agreement to assign back the royalties to the [s]ongs." However, SF Holding did not terminate a lien it had placed on the royalties. In June 2018, SF Holding filed a notice with the California Secretary of State's Office continuing the lien. In early 2022, Goldstein was trying to secure financing for "certain real property holdings" with royalties from the songs as collateral. Goldstein said he was initially provided with terms that were "acceptable and reasonable," but after the lender discovered that SF Holding failed to terminate its lien on the songs, the financing terms were "drastically changed and were no longer reasonable or acceptable." Goldstein claimed this was the first time he learned the lien on the songs had not been terminated. SF Holding filed a notice with the Secretary of State in November 2022, deleting the songs from the collateral listed on its lien.

Goldstein claims Stephenson continued to perpetrate his "scheme" in June and November 2020 by calling Goldstein and threatening to seize all of his interests in various music royalties and obstruct business transactions until he paid all amounts owed under the 2015 promissory note. Goldstein asserted he

5

demanded accountings in the past, including during a phone call in November 2020, but no accounting was provided.

The TACC also made allegations concerning Goldstein's condominiums in Hawaii. Goldstein entered into an agreement with the WBV homeowners' association in August 2013 that required the association to use its best efforts to maximize rental proceeds from Goldstein's condominiums. Stephenson was the treasurer of the Board of Directors of the WBV homeowners' association and exerted "professional and financial influence" on the homeowners' association. After reaching a "belated [rental] agreement" with a third-party, Stephenson allegedly rented Goldstein's units at a "75% loss per month from 2015 through 2017" and "at least a 68% loss per month for 2019." Goldstein claimed that through "recent deposition testimony" in a civil case in the state of Hawaii, he discovered his properties should have collected thousands of dollars more per month.

Goldstein sought to increase his rental income through an arrangement involving a rental agency called Quintess Collection Vacations Club (Quintess). Quintess guaranteed rental income of $25,000 per month, but Stephenson informed Goldstein "the Board would never agree to an arrangement" with Quintess. Instead, Stephenson "unnecessarily interfere[ed] with the potential deal by attempting to associate his very own unit with [Goldstein's]." Goldstein "later found out someone else" in the WBV development had an agreement with Quintess. Goldstein asserted Stephenson "maliciously and illegally defrauded" him of significant profits to obtain leverage over him and create an opportunity for respondents to purchase his condominiums below their fair market value.

6

The TACC alleged causes of action for (1) financial elder abuse; (2) accounting; (3) fraud; (4) negligent misrepresentation; (5) breach of fiduciary duty; (6) violation of Business and Professions Code section 17200; (7) violation of Commercial Code section 9210; and (8) intentional interference with prospective economic advantage.

## C.     Demurrer to TACC

In June 2023, respondents filed a demurrer to the TACC, arguing the conduct on which Goldstein's claims were based occurred outside of any limitations period.  The trial court granted respondents' request for judicial notice of multiple court filings and of a Uniform Commercial Code Financing Statement Amendment dated September 2, 2015.  The statement provided SF Holdings was requesting the following collateral be deleted from a prior financing statement: "All rights and interests of Debtors named herein in and to all royalties from the musical compositions 'My Boyfriend's Back' and 'I Want Candy' of every kind and nature now owned or hereafter acquired by Debtors named herein and all proceeds thereof."

The trial court determined Goldstein's claims were barred by the applicable statutes of limitations.  The court noted the most recent alleged transaction between SF Holding and Goldstein was the 2015 promissory note and that the dealings between Stephenson and Goldstein occurred from 2007 to 2009. The court found Goldstein was on notice of a potential injury when he allegedly did not receive his requested loan funds or was threatened so as to force him into business dealings from 2007 to 2015.  The court further found Goldstein did not plead any facts

7

that tolled the limitations periods. The court sustained the demurrer as to all causes of action without leave to amend.

The trial court entered a judgment of dismissal of Goldstein's TACC. Goldstein timely appealed.

## DISCUSSION

### A.    Standard of Review

We review an order sustaining a demurrer without leave to amend de novo. (*United Talent Agency v. Vigilant Ins. Co.* (2022) 77 Cal.App.5th 821, 829.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 (*Blank*).) When a demurrer is sustained without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Ibid.*)

"'When a ground for objection to a complaint, such as the statute of limitations, appears on its face or from matters of which the court may or must take judicial notice, a demurrer on that ground is proper.' [Citation.] '[W]hen "the relevant facts are not in dispute, the application of the statute of limitations may be decided as a question of law."'" (*Alfaro v. Community Housing*

8

*Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1391.)

A trial court's judgment is presumed to be correct, and the burden is on the appellant to show error that justifies reversal. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.)  "'To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error.  [Citations.]' [Citation.]  'Mere suggestions of error without supporting argument or authority other than abstract principles do not properly present grounds for appellate review.' [Citation.] 'Hence, conclusory claims of error will fail.'" (*Multani v. Witkin & Neal* (2013) 215 Cal.App.4th 1428, 1457 (*Multani*).)

These principles apply even where, as here, the applicable standard of review is de novo.  (See *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913 ["''"[D]e novo review does not obligate us to cull the record for the benefit of the appellant"'''].)  Thus, "'[e]ven when our review on appeal "is de novo, it is limited to issues which have been adequately raised and supported in [the appellant's opening] brief.  [Citations.] Issues not raised in an appellant's brief are deemed [forfeited] or abandoned."'" (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 554–555.)

**B.  Demurrer to TACC**

Goldstein argues the trial court erred by sustaining the demurrer to his TACC without leave to amend after finding his claims were time-barred.  We are not persuaded.

9

1.     *Applicable Statutes of Limitations*

Goldstein asserts the trial court applied the incorrect statutes of limitations to his causes of action for breach of fiduciary duty, accounting, violation of Business and Professions Code section 17200, violation of Commercial Code section 9210, and financial elder abuse.  He contends the court should have applied a four-year statute of limitations to each claim.  Goldstein does not demonstrate the court erred.

"'To determine the statute of limitations which applies to a cause of action it is necessary to identify the nature of the cause of action, i.e., the 'gravamen' of the cause of action.  [Citations.] "[T]he nature of the right sued upon and not the form of action nor the relief demanded determines the applicability of the statute of limitations under our code.""' (*Vera v. REL-BC, LLC* (2021) 66 Cal.App.5th 57, 64.)  For example, "'[i]f the complaint states a cause of action in tort, and it appears that this is the gravamen of the complaint, the nature of the action is not changed by allegations in regard to the existence of or breach of a contract.  In other words, it is the object of the action, rather than the theory upon which recovery is sought that is controlling.'" (*Id.* at p. 65.)

Goldstein alleged that after meeting Stephenson in 2006, respondents "began to develop a complex fraudulent scheme to bilk [Goldstein] out of millions of dollars."  In furtherance of the "fraudulent scheme," respondents allegedly coerced, overtly threatened, and defrauded Goldstein into executing multiple agreements from 2007 to 2015.  Additionally, Goldstein alleged that by 2015 Stephenson leveraged his role as the WBV board treasurer to force Goldstein's condominiums to be rented at below market rates to "[e]xpand[ ] the fraud" and "manufacture

[Goldstein's] fraudulent debt purportedly owed to" respondents. The TACC incorporates these allegations into every cause of action. The gravamen of the TACC is that respondents engaged in a fraudulent scheme to "cheat [Goldstein] of his personal and real property."

The general rule is that the three-year limitations period found in Code of Civil Procedure section 338, subdivision (d), applies to "'[a]n action for relief on the ground of fraud or mistake.'" However, for some causes of action that sound in fraud, there is a more specific statutory provision establishing the applicable limitations period. "[A] specific limitations provision prevails over a more general provision." (*Creditors Collection Service v. Castaldi* (1995) 38 Cal.App.4th 1039, 1043; see *Shewry v. Begil* (2005) 128 Cal.App.4th 639, 643 [where a specific limitations period applies, the more general period codified in Code of Civil Procedure section 338 does not apply].)

Goldstein does not show the trial court erred in applying the three-year limitations period in section 338, subdivision (d), to Goldstein's claims for breach of fiduciary duty, accounting, and failure to provide a debtor with an accounting in violation of Commercial Code section 9210. These claims sound in fraud, and no more specific statute of limitations applies to them. (Code of Civ. Proc., § 338, subd. (d); see *Professional Collection Consultants v. Lujan* (2018) 23 Cal.App.5th 685, 691 ["if a complaint alleges acts of actual and constructive fraud but frames its cause of action as one for breach of fiduciary duty, the statute of limitations for fraud applies"]; see also *Dunn v. Los Angeles County* (1957) 155 Cal.App.2d 789, 801–802 [action for accounting based on fraud and mistake barred by three-year statute of limitations].)

11

Goldstein does not show the trial court applied the wrong statute of limitations to his causes of action for violation of Business and Professions Code section 17200 and financial elder abuse either. These causes of action are subject to more specific statutory limitations periods. As the trial court recognized, the statute of limitations for each was four years. (Bus. & Prof. Code § 17208; Welf. & Inst. Code § 15657.7.) Contrary to Goldstein's assertions, the trial court did not apply the three-year limitation period set forth in section 338, subdivision (d) to these claims.[1]

2. *Goldstein Does Not Establish the Trial Court Erred by Concluding His Claims were Time-Barred*

Goldstein avers his claims were all timely filed within the applicable statutes of limitations. We disagree.

Traditionally, a "'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.'" (*Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1191 (*Aryeh*).) A cause of action based on fraud begins to accrue upon the "discovery, by the aggrieved party, of the facts constituting the fraud or mistake." (Code of Civ. Proc., § 338, subd. (d).) "The period of limitations, therefore, will begin to run when the plaintiff has a 'suspicion of wrongdoing'; in other words, when he or she has notice of information of circumstances to put a reasonable person on inquiry." (*Brandon G. v. Gray* (2003) 111 Cal.App.4th 29, 325.)

---

[1] The trial court also noted the statute of limitations was three years for the fraud claim and two years for the negligent misrepresentation and intentional interference with prospective economic advantage claims, which Goldstein does not challenge.

12

According to the TACC, respondents began their fraudulent scheme in June 2007, when SF Holding's predecessor and Goldstein executed a promissory note, which was not fully funded. The TACC repeatedly alleges Goldstein was coerced into executing additional fraudulent agreements that falsely stated the amounts he owed. At times, respondents openly "threatened to destroy [Goldstein's] business opportunities and relationships, unless he agreed to execute" the agreements. In 2015, respondents allegedly forced Goldstein to enter into the final fraudulent agreements by "additional threats of destruction of [Goldstein's] business opportunities and relationships." It was then that respondents fraudulently "obtain[ed], under duress, [Goldstein's] agreement to pay $500,000" to respondents in exchange for terminating their lien and assigning the royalties from the songs back to Goldstein. As to Goldstein's WBV condominiums, Stephenson allegedly intentionally leveraged his position with the homeowners' association board in or before 2015 to defraud Goldstein and cause his units to be rented at below market rates.

In summary, based on the TACC's allegations, respondents' fraudulent conduct and misrepresentations began in 2007 and continued as the parties entered into each subsequent agreement. The most recent misconduct occurred in 2015, when the parties entered into the last promissory note and the agreement to terminate the lien on the songs. It is also the year Goldstein's condominiums were rented.

Goldstein's contention that the accrual date for his claims for accounting, breach of fiduciary duty, violation of Business and Professions Code section 17200, and violation of Commercial Code section 9210 is the June 30, 2016, maturity date of the

13

August 2015 promissory note is unavailing. Goldstein's allegations against respondents concern the making of multiple alleged fraudulent agreements entered into under threat, coercion, and duress. Goldstein does not cite any authority showing the maturity date of the promissory note is relevant to the accrual of his causes of action grounded in the alleged fraudulent misconduct.

Similarly unpersuasive is Goldstein's assertion that the fraud cause of action did not accrue until November 2022 when he lost reasonable financing terms for real property because there were still liens on his songs. Goldstein asserts that in 2015 respondents "falsely represented" they would terminate their lien and reassign their interest in the song royalties to Goldstein in exchange for $500,000, when in reality, they did not intend to actually terminate the lien.[2] Goldstein's fraud claim was complete with all its elements (misrepresentation, causation, and damage) in 2015 when he was allegedly misled into paying the $500,000. (*Aryeh, supra*, 55 Cal.4th at p. 1191.) He fails to cite any authority supporting his contention that the claim accrued in 2022 when he may have suffered additional damages. (See *Clark v. Baxter Healthcare Corp.* (2000) 83 Cal.App.4th 1048, 1056 ["a

---

[2]     For the first time in his reply brief, Goldstein argues the June 2018 filing of the notice of the continuance of the lien is "imperative" because the lien would have otherwise lapsed on July 1, 2018. "Generally, arguments raised for the first time in a reply brief are forfeited." (*Sweetwater Union High School Dist. v. Julian Union Elementary School Dist.* (2019) 36 Cal.App.5th 970, 987.) "'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.'" (*In re Marriage of Khera & Sameer* (2012) 206 Cal.App.4th 1467, 1477.) Moreover, the TACC does not allege that the lien would have otherwise lapsed on July 1, 2018.

14

single tort can be the foundation for but one claim of damages"]; see also *Buttram v. Owens-Corning Fiberglas Corp.* (1997) 16 Cal.4th 520, 531 fn. 4 ["as a general proposition it is settled that a plaintiff's cause of action accrues for purposes of the statute of limitations upon the occurrence of the last element essential to the cause of action; that is when the plaintiff is first entitled to sue"].)

SF Holding filed its complaint in December 2020, and Goldstein filed his initial cross-complaint in January 2021, each more than five years after Goldstein entered into the 2015 promissory note. The pleadings were also filed more than five years after the dates on which the TACC alleges respondents failed to properly release the lien on the songs and Stephenson leveraged his position to rent the WBV condominiums at below market value. Because the fraud had allegedly occurred by 2015, and Goldstein's claims have statutes of limitations of four years or less, the causes of action are time-barred unless some ground exists for tolling the applicable limitations periods.

> 3. *Goldstein Does Not Establish the Alleged Facts Show the Statutes of Limitations were Tolled*

Goldstein contends his claims are timely under the delayed discovery rule, or alternatively, under the fraudulent concealment, continuing violation, or continuous accrual doctrines.[3] Goldstein does not establish the statutes of limitations were tolled under any theory.

---

[3] Goldstein also argues the trial court erred in not applying the "last overt act" doctrine. However, Goldstein did not respond to respondents' assertion that the doctrine applies only to a conspiracy

15

When plaintiffs bring fraud claims more than three years after the acts constituting fraud occurred, they have the burden of pleading and proving that they did not discover and could not reasonably have discovered the wrongdoing three years prior to the filing of their complaint. (*Cansino v. Bank of America* (2014) 224 Cal.App.4th 1462, 1472 (*Cansino*).) "'An exception to the general rule for defining the accrual of a cause of action—indeed, the "most important" one—is the discovery rule.'" (*E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1317–1318.) "The discovery rule 'postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action.'" (*Id.* at p. 1318; see *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 192 ["Under the discovery rule, the statute of limitations begins to run when the plaintiff suspects or should suspect that her injury was caused by wrongdoing, that someone has done something wrong to her"].)

"Equitable tolling, in turn, may suspend or extend the statute of limitations when a plaintiff has reasonably and in good faith chosen to pursue one among several remedies and the statute of limitations' notice function has been served." (*Aryeh*, *supra*, 55 Cal.4th at p. 1192.) "The doctrine of fraudulent concealment tolls the statute of limitations where a defendant,

---

claim and is inapplicable here. Stephenson was allegedly the agent and employee of SF Holding (the two defendants in the TACC) at all times alleged in the TACC, and as such, could not have conspired with SF Holding. (*Lawrence v. Bank of America* (1985) 163 Cal.App.3d 431, 437 ["the agents and employees of a corporation cannot conspire with their corporate principal"]; see *Magic Kitchen v. Good Things Internat. LTD.* (2007) 153 Cal.App.4th 1144, 1158 ["last overt act" doctrine not applicable where appellate briefs did not cite any evidence of a conspiracy].)

through deceptive conduct, has caused a claim to grow stale. [Citation.]  The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them.  [Citations.]  Finally, under the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period."  (*Ibid.*)

First, Goldstein argues his claims are timely under the delayed discovery rule because the complaint and initial cross-complaint were filed before he discovered respondents' lien on the royalties to the songs "My Boyfriend's Back" and "I want Candy" was still in place in 2022.  "In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.'  [Citation.]  In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.'"  (*Fox v. Ethicon Endo-Surgery, Inc.* (2005) 35 Cal.4th 797, 808.)  "The discovery related facts should be pleaded in detail to allow the court to determine whether the fraud should have been discovered sooner."  (*Cansino, supra,* 224 Cal.App.4th at p. 1472.)

The TACC shows the time and manner Goldstein discovered the lien was still in place.  It alleges Goldstein

17

discovered the lien when he was attempting to use the royalties from the songs to secure real estate financing in 2022. However, the TACC does not address the second prong of the discovery rule. Goldstein does not plead facts showing that he was unable to make the discovery sooner despite reasonable diligence. Instead, Goldstein argues that because he alleged a fiduciary relationship existed between respondents and him "by virtue of the 2007 and 2008 [b]usiness [m]anagement [a]greements," the duty of diligence to discover facts did not exist.

"'Where a fiduciary obligation is present, the courts have recognized a postponement of the accrual of the cause of action until the beneficiary has knowledge or notice of the act constituting a breach of fidelity. [Citations.] The existence of a trust relationship limits the duty of inquiry. "Thus, when a potential plaintiff is in a fiduciary relationship with another individual, that plaintiff's burden of discovery is reduced and he is entitled to rely on the statements and advice provided by the fiduciary."'" (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 157 (*WA Southwest*).) "However, [a] plaintiff does have a duty to investigate even where a fiduciary relationship exists when 'he has notice of facts sufficient to arouse the suspicions of a reasonable man.' [Citations.] If such facts actually do come to his attention he may not sit idly by for at that point the statute of limitations begins to run." (*Electronic Equipment Express, Inc. v. Donald H. Seiler & Co.* (1981) 122 Cal.App.3d 834, 855 (*Electronic Equipment*); see *WA Southwest 2*, at p. 157 ["even assuming for the sake of argument that each of the respondents had a fiduciary duty to plaintiffs, this does not mean that plaintiffs had no duty of inquiry if they were put on notice of a breach of such duty"].)

As a preliminary matter, the TACC does not sufficiently allege respondents had a fiduciary relationship with plaintiff under the 2007 or 2008 business management agreements after 2015. The TACC alleges a fiduciary relationship existed because Goldstein and Stephenson (not SF Holding) entered into a business management agreement in 2007. It further alleges the agreement was amended in 2008. The 2008 amendment, which is attached to the TACC, states the business management agreement expired in 2009. Goldstein attempts to perpetuate the relationship by alleging "said agreements are incorporated into the various [later] loan agreements." However, this allegation is conclusory and belied by the exhibits attached to the TACC. The loan agreements only included debt Goldstein incurred under the business management agreements. Further, the First Amendment to Pledge and Security Agreement, executed in March 2013, confirmed the business management agreements between Goldstein were terminated, "so that no party ha[d] any further rights or obligations under" them.

Goldstein cites *M'Guinness v. Johnson* (2015) 243 Cal.App.4th 602, 613–614, in asserting "a fiduciary's obligations can survive termination of an agreement when confidential information and client confidence therein is still entrusted to fiduciary [*sic*]." *M'Guinness* addressed the existence of an attorney-client relationship in the context of a disqualification motion concerning a concurrent representation conflict of interest. (*Id.* at pp. 608–609.) Goldstein fails to explain how *M'Guinness* establishes respondents owed Goldstein a fiduciary duty under the circumstances of this case.

Even if we assume that such a duty existed, the allegations in the TACC indicate Goldstein had a reason to be suspicious of

19

respondents' representations, such that he should have investigated them. The parties made the agreement concerning the song royalties on the same day respondents allegedly threatened to destroy Goldstein's business opportunities and relationships. Respondents' overt threats[4] and misconduct, which had allegedly occurred for years, was "'sufficient to arouse the suspicions of a reasonable man.'" (*Electronic Equipment*, *supra*, 122 Cal.App.3d at p. 855.)

Under the discovery rule, Goldstein was required to allege an inability to discover the facts concerning the alleged fraudulent lien. The TACC does not allege respondents did anything to prevent him from investigating whether the lien was terminated after he paid respondents $500,000.[5] Had Goldstein investigated, the lien may have been revealed. (See *Miller v, Bechtel Corp.* (1983) 33 Cal.3d 868, 875 [plaintiff in action for fraud against fiduciary charged with knowledge available from public records after plaintiff's suspicions had been aroused]; see also *Hobbs v. Bateman Eichler, Hill Richards, Inc.* (1985) 164

---

[4] Although Goldstein asserts for the first time in his reply brief that he only understood respondents made "threats" in hindsight, the TACC does not contain any allegations to this effect.

[5] Goldstein also asserts that respondents placed two liens on the royalties to the subject songs: one in July 2012 and another in July 2013. In making this assertion, Goldstein cites to a "demand letter" with attached documents sent from his counsel to respondents' counsel. These were filed in opposition to respondents' demurrer in the trial court. Goldstein did not request judicial notice be taken of any of these documents, nor has he established that it would be proper to do so. When testing the adequacy of a plaintiff's pleadings on a demurrer, we are confined to the four corners of the complaint and to matters which may be judicially noticed. (*Thorburn v. Department of Corrections* (1998) 66 Cal.App.4th 1284, 1287–1288.)

Cal.App.3d 174, 202 ["once a plaintiff becomes aware of facts which would make a reasonably prudent person suspicious, the duty to investigate arises and the plaintiff may then be charged with knowledge of the facts which would have been discovered by such an investigation" (italics omitted)].)

As to the fraudulent concealment doctrine, Goldstein contends respondents masked their fraudulent conduct by denying his accounting requests. The fraudulent concealment doctrine requires a plaintiff to "allege the supporting facts—i.e., the date of discovery, the manner of discovery, and *the justification for the failure to discover the fraud earlier*—with the same particularity as with a cause of action for fraud." (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 962 (italics added).) "In urging lack of means of obtaining knowledge, it must be shown that in the exercise of reasonable diligence the facts could not have been discovered at an earlier date. [Citation.]" (*Baker v. Beech Aircraft Corp.* (1974) 39 Cal.App.3d 315, 321.)

Even if his accounting requests were denied, Goldstein fails to explain how respondents were able to otherwise conceal their fraud, making him unable to discover it earlier. In arguing that the fraudulent concealment doctrine should apply, Goldstein asserts he "was only able to discover the Respondent's fraud, [*sic*] after recent discovery responses" served in another action. However, the TACC does not allege any facts with particularity regarding the responses. For example, it does not identify their date or quote them, making them inadequate to show Goldstein could not have discovered the fraud before the responses were

21

provided.[6]  (See *Fuller*, at p. 962; see also *Castro v. Superior Court* (1974) 40 Cal.App.3d 614, 621–622 ["'Recently' is a relative term, whose meaning depends on the context in which it is employed"].)

Next, "[f]or the continuing violation doctrine to apply, a plaintiff must show the defendant engaged in 'a pattern of reasonably frequent and similar acts [that] may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period.'" (*Willis v. City of Carlsbad* (2020) 48 Cal.App.5th 1104, 1124.)  In arguing the continuing violation doctrine should apply, Goldstein asserts respondents "trapped" him in the initial 2007 promissory note, and as it was going to mature, threatened to disrupt his business unless he "executed another agreement, and another and another, culminating in the 2015 [promissory note]." Goldstein, thus, acknowledges that even if these acts were a pattern of wrongs, they culminated in August 2015, which was still outside the statute of limitations period.

The case cited by Goldstein, *Aryeh,* does not support his argument that the continuing violation doctrine applies.  In *Aryeh*, the lessee of Canon copiers alleged Canon violated unfair competition laws by charging him for test copies made by Canon employees on 17 service visits over the course of two years.

---

[6]  In arguing the fraudulent concealment doctrine should apply, Goldstein footnotes that in a different case in 2016 he filed a motion, of which the trial court took judicial notice, stating that the loans from respondents were "illegal, false and usurious . . . premised on Appellant's understanding that the loans misstated [the] amounts due."  This indicates he knew, prior to the "recent [discovery] responses," what he believes an accounting would have shown.

(*Aryeh*, *supra*, 55 Cal.4th at p. 1190.)  The court concluded the continuing violation doctrine was inapplicable to toll the statute of limitations because the complaint "identifie[d] a series of discrete, independently actionable alleged wrongs."  (*Id.* at p. 1198; cf. *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1058 [applying the continuing violation doctrine where "some or all of the component acts might not be individually actionable" and the plaintiff "may not yet recognize" the acts "as part of a pattern"].)

Finally, Goldstein contends respondents engaged in a "continued pattern of behavior warranting application of the continuous accrual doctrine."  According to Goldstein, "the trial court errored [*sic*] in its ruling having failed to articulate what fraudulent acts were" within and outside "the statutory period."  However, Goldstein fails to meet his burden to affirmatively show the court erred.  (*Multani*, *supra*, 215 Cal.App.4th at p. 1457.)  As we have discussed, he does not identify fraudulent acts within statutory limitation periods.  Indeed, he does not cite to any allegations in the TACC or the record in asserting the continuous accrual doctrine is applicable.[7]

---

[7]     We note the TACC includes some allegations to which Goldstein does not refer when arguing that his causes of action are timely.  For example, Goldstein does not discuss the potential rental of his condominiums to Quintess when he argues in his appellate briefs that the delayed discovery rule or equitable tolling applies to his claims.  "'"When an appellant fails to raise a point . . . we treat the point as [forfeited]."'"  (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721; *Golden Door Properties, LLC v. County of San Diego*, *supra*, 50 Cal.App.5th at pp. 554–555.)

23

In sum, Goldstein has not shown the trial court erred by determining the delayed discovery rule and equitable tolling doctrines did not save his claims.[8]

### 4. *Goldstein Does Not Demonstrate the Trial Court Abused its Discretion in Denying Leave to Amend*

When a demurrer is sustained without leave to amend, we decide whether a reasonable possibility exists the defect can be cured by amendment. (*Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 (*Rakestraw*).) "'The burden of proving such reasonable possibility is squarely on the plaintiff.'" (*Blank, supra*, 39 Cal.3d at p. 318.) "[A] plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading.' [Citation.] The assertion of an abstract right to amend does not satisfy this burden." (*Rakestraw*, at p. 43.) The proffered "[a]llegations must be factual and specific, not vague or conclusionary." (*Id.* at p. 44.) "Where the appellant offers no allegations to support the possibility of amendment . . . there is no basis for finding the trial court abused its discretion when it sustained the demurrer without leave to amend." (*Ibid.*)

In arguing the trial court abused its discretion in denying him leave to amend, Goldstein vaguely asserts, "The TACC could

---

[8] Goldstein also asserts the trial court erred in failing to apply the relation back doctrine to his claims. The relation back doctrine allows cross-claims based upon subject matter related to the plaintiff's complaint to be treated as if they were filed on the same date as the original complaint for statute of limitations purposes. (*Luna Records Corp., Inc. v. Alvarado* (1991) 232 Cal.App.3d 1023, 1028.) It does not revive cross-claims that are already time-barred when the complaint is filed. (*Trindade v. Superior Court* (1973) 29 Cal.App.3d 857, 859.)

have been amended in several ways so that timely claims were kept while time barred claims were dismissed or stricken." Goldstein fails to identify "factual and specific" allegations he intends to add, or could add, if given leave to amend. (*Rakestraw, supra*, 81 Cal.App.4th at p. 44.) And he does not show how any amendments will change the legal effect of the pleading. (*Id.* at p. 43.) Goldstein has not met his burden. (*Blank, supra*, 39 Cal.3d at p. 318.) Accordingly, we find no abuse of discretion in the court's denial of leave to amend.

### DISPOSITION

The judgment is affirmed. Respondents are awarded costs on appeal.

MORI, J.

We concur:

CURREY, P. J.

COLLINS, J.

25